1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, | Case No.:  20cv765-GPC(DEB) |
| 12                              Plaintiff, | **ORDER GRANTING THE NEWLINS' MOTION TO DISMISS BREACH OF CONTRACT CLAIM AND GRANTING ALL DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT** |
| 13  v. | |
| 14  ANTHONY and BLYTHE NEWLIN, as individuals; QUADE & ASSOCIATES, PLC, a California professional liability company; AIG PROPERTY CASUALTY COMPANY, a Pennsylvania corporation, and DOES 1 through 10, inclusive, | **[Dkt. No. 13, 15.]** |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19                              Defendants. | |

20
21        Before the Court are Defendant AIG Property Casualty Company's motion to
22  dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Defendants
23  Anthony and Blythe Newlin, and Quade & Associates, PLC's motion to dismiss pursuant
24  to Rule 12(b)(1) and Rule 12(b)(6).  (Dkt. Nos. 13, 15.)  Both motions are fully briefed.
25  (Dkt. Nos. 35, 36, 40, 42, 43.)  Based on the reasoning below, the Court GRANTS
26  Anthony and Blythe Newlin's motion to dismiss the breach of contract claim pursuant to
27  Rule 12(b)(6) and GRANTS all Defendants' motion to dismiss under Rule 12(b)(1).
28  / / /

**Procedural Background**

On May 1, 2020, Plaintiff Travelers Indemnity Company of Connecticut ("Plaintiff" or "Travelers") filed the operative first amended complaint ("FAC") alleging four counts for declaratory relief against Defendants Anthony and Blythe Newlin ("the Newlins"), Quade & Associates ("Quade"), and AIG Property Casualty Company, ("AIG") as well as a breach of contract claim against the Newlins based on facts arising from an underlying state court complaint in San Diego County Superior Court, Case No. 37-2017-00006963-CU-OR-NC entitled *Hamadeh et al. v. Newlins, et al.,* ("Hamadeh Litigation"). (Dkt. No. 5, FAC.) On June 11, 2020, the Newlins, AIG and Quade each separately filed a third-party complaint against CCL Contracting, Inc. and a counterclaim against Travelers. (Dkt. Nos. 14, 16, 17.)

On June 11, 2020, the Newlins and Quade filed the instant motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), (Dkt. No. 15), and AIG filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. No. 13.)

**Factual Background**

According to the FAC, Travelers issued to CCL Contracting, Inc. ("CCL Contracting"), as the named insured, commercial general liability policies from April 1, 2014 – April 1, 2018 ("CCL Policies"). (Dkt. No. 5, FAC ¶ 8.) Travelers alleges that in November 2013, CCL Contracting was awarded the contract for a project for the Santa Fe Irrigation District referred to as the Group 2 Pipelines Project. (*Id.* ¶ 16.) Per the Santa Fe Irrigation District plans, specifications and easements, CCL Contracting installed one or more replacement water lines for property located at 16350 Via Del Alba, Rancho Santa Fe, California 92067 ("Property") which, at the time, was owned by the Newlins. (*Id.; id.* ¶ 2.) CCL Contracting relocated an existing public fire hydrant on Via del Alba to the end of the cul-de-sac approximately 3 feet onto the Property per a Santa Fe Irrigation District easement. (*Id.* ¶ 16.)

On February 24, 2017, Bassim Hamadeh, Seidy Hamadeh and The

2

Ravello Trust, Bassim and Seidy Hamadeh as Trustees filed a complaint in the Superior Court for the County of San Diego against the Newlins and their real estate agents for (1) negligent misrepresentation, (2) negligence and (3) breach of contract arising out of the Hamadeh's purchase of the Property from the Newlins in 2015 or Hamadeh Litigation. (*Id.* ¶ 17.)  An amended complaint was later filed.  (*Id.*)  Around August 3, 2017, the Newlins, through their legal representative, Quade, tendered their defense in the Hamadeh Litigation to Travelers as additional insureds under some or all of the CCL Policies.  (*Id.* ¶ 18.)  In the tender, the Newlins asserted that the Hamadeh's alleged defects and damages resulted from work performed by CCL Contracting at the Property. (*Id.*)  Around December 7, 2017 the Newlins filed a cross-complaint against CCL Contracting, and others, in the Hamadeh Litigation.  (*Id.* ¶ 19.)  Travelers acknowledged receipt of the Newlins' tender and sent correspondence to the Newlins advising them that Travelers' accepted their tender under some or all of the CCL Policies under a reservation of rights and agreed to defend the Newlins in the Hamadeh Litigation.  (*Id.* ¶ 20.)  At the time, Travelers asserted its right to retain counsel of its choosing and advised the Newlins that it was retaining James Bohm of Bohm Wildish to represent and defend them in the Hamadeh Litigation.  (*Id.*)

However, the Newlins refused to accept Traveler's appointed counsel to defend them in the Hamadeh Litigation and which allegedly constituted a material breach of the policies.  (*Id.* ¶ 21.)  In addition, the Newlins tendered their defense in the Hamadeh Litigation to AIG under their Policy and AIG agreed to defend and fully defended the Newlins in the Hamadeh Litigation through Quade and/or Tyson & Mendes. (*Id.* ¶ 22.)  Around January 2019, AIG settled the claims asserted against the Newlins in the Hamadeh Litigation and the claims against them were subsequently dismissed with prejudice.  (*Id.* ¶ 23.)  The cross-complaint filed by the Newlins against CCL Contracting in the Hamadeh litigation remains pending in San Diego Superior Court and no trial date is currently set.  (*Id.* ¶ 24.)  Quade contends that Travelers is obligated to pay attorney fees and costs billed through its firm to defend the Newlins in the Hamadeh Litigation.

(*Id.* ¶ 25.)  Due to the material breach by the Newlins, Travelers disputes Quade, the Newlins and AIG's contentions that Travelers was obligated to defend the Newlins, pay any attorneys' fees or costs incurred by the Newlins, their personal counsel or AIG's appointed defense counsel, or duty to indemnify AIG under the CCL Policies.

As such, Travelers seeks 1) declaratory relief against the Newlins for a number of declarations concluding that Travelers has no obligations under the CCL Policies; 2) breach of contract against the Newlins; 3) declaratory relief against Quade for a number of declarations concluding that Travelers has no obligations under the CCL Policies; 4) declaratory relief against AIG (duty to defend); and 5) declaratory relief against AIG (duty to indemnity).  (*Id.* ¶¶ 26-50.)

According to the third-party complaint filed by Quade against CCL Contracting and counterclaim against Travelers, Quade alleges that in January 2019, AIG funded a $900,000 settlement between the Newlins, the Hamadeh and all Hamadeh cross-defendants except CCL Contracting were dismissed with prejudice.  (Dkt. No. 17, TPC/Counterclaim ¶ 16.)  On June 10, 2020, the Newlins assigned all their rights under the legal services agreement with Quade to recover unpaid excess fees from CCL Contracting and/or Travelers while still retaining their own personal rights to pursue claims for emotional distress, punitive damages and attorney's fees incurred in recovering contractual benefits unreasonably withheld by Travelers.  (*Id.* ¶ 17.)  According to Quade, CCL Contracting and Travelers are obligated to pay it the excess fees of about $1.7 million, plus interest.  (*Id.* ¶ 18.)  Quade alleges breach of contract against CCL Contracting, (*id.* ¶¶ 65-72), breach of contract-duty to defend-independent counsel against Travelers, (*id.* ¶¶ 73-76), and indemnity, equitable subrogation, waiver/estoppel against Travelers, (*id.* ¶¶ 77-81).

In the Newlins' third-party complaint against CCL Contracting and counterclaim against Travelers, they contend that in the underlying state court case, on December 17, 2017, the Newlins filed a cross-complaint against, among other cross-defendants, CCL Contracting, alleging breach of contract, negligence, negligent misrepresentation,

indemnity, contribution, apportionment and declaratory relief.  (Dkt. No. 16, TPC/Counterclaim ¶ 13.)  During the Hamadeh litigation, AIG, on behalf of the Newlins, paid over $1.5 million in attorney fees and costs to Tyson Mendes and Quade.  (*Id*. ¶ 14.)  In January 2019, AIG funded a $900,000 settlement between the Newlins, the Hamadeh plaintiff and the cross-defendants except CCL Contracting which was confirmed by the trial court on June 13, 2019.  (*Id.* ¶ 15.)  The third-party complaint and counterclaim allege breach of contract against CCL Contracting, (*id.* ¶¶ 57-62), breach of insurance contract against Travelers, (*id.* ¶¶ 63-70), and breach of implied covenant of good faith and fair dealing against Travelers, (*id.* ¶¶ 71-75).

In AIG's third-party complaint against CCL Contracting and counterclaim against Travelers, it alleges equitable subrogation – express contractual indemnity against CCL Contracting, (Dkt. No. 13, TPC/Counterclaim ¶¶ 56-64), equitable subrogation - contractual promise to procure primary coverage against CCL Contracting, (*id.* ¶¶ 65-69), equitable subrogation – express contractual indemnity against Travelers, (*id.* ¶¶ 70-75), equitable indemnity against Travelers, (*id.* ¶¶ 76-78), equitable contribution – proportionate liability against CCL Contracting, (*id.* ¶¶ 79-81), and equitable contribution – proportionate liability against Travelers, (*id.* ¶¶ 82-84).

**Discussion**

**A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Rule 12(b)(1) jurisdictional attacks can be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Here, Defendants are mounting a factual attack on subject matter jurisdiction by providing evidence outside the FAC but Plaintiff argues that the motion should be viewed as a facial attack because Defendants rely on no evidence of disputed facts.  Notwithstanding Plaintiff's argument, under either standard, the Court concludes that dismissal is appropriate under its discretionary authority over the declaratory relief claims.

In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Under a factual attack, the allegations in the complaint are not presumed to be true, *White,* 227 F.3d at 1242, and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendarle Union H.S., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  The district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.  *See id.*  However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"  *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted)).  Ultimately, Plaintiff has the burden to demonstrate that subject matter jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

**B.     Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

## C.  Newlins' Motion to Dismiss Breach of Contract Claim for Failure to State a Claim

The Newlins move to dismiss the second cause of action for breach of contract arguing that a purported breach of the cooperation clause in the insurance policy fails to allege a viable claim and the claim fails to allege damages. (Dkt. No. 15-1 at 10.[1]) Travelers responds that its breach of contract claim alleges both breach of the insuring agreement and breach of the cooperation clause and damages are sufficiently alleged. (Dkt. No. 35 at 10-11.) Nonetheless, Travelers contends that breach of the cooperation clause can allege a breach of contract claim. In reply, the Newlins argue that Travelers

---

[1] Page numbers are based on the CM/ECF pagination.

fails to allege a breach of the insuring agreement as well as the breach of the cooperation agreement.  (Dkt. No. 42 at 8-13.)

The FAC alleges that the CCL Policies provide that in the event of an occurrence, offense, claim or suit, any insured must "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit'" and "[a]ssist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply."  (Dkt. No. 5, FAC ¶ 10.)  The CCL Policies also provide that Travelers "will have the right and duty to defend the insured against any 'suit' seeking those damages."  (*Id.* ¶ 9.)  On the breach of contract claim, the FAC claims that the Newlins had a mandated duty to cooperate with Travelers with regards to all aspects of coverage, including any defense afforded under the policies, that Travelers performed all conditions, covenants, and promises required on its part, and the Newlins breached the insurances policies.  (*Id.* ¶¶ 32-34.)  The Newlins breached their duty by 1) refusing to acknowledge that Travelers had the right to control the defense and select counsel in the Hamadeh Litigation, and 2) insisting that Travelers continue to pay fees and costs to Newlins' chosen counsel, thereby impeding Travelers' ability to provide the Newlins with a defense.  (*Id.* ¶ 34.)  Due to the breach of the CCL Policies and breach of the duty to cooperate, it "has been damaged in a sum according to proof at trial and including, but not limited to, a denial of policy benefits."  (*Id.* ¶ 35.)

Under California law, the elements required for a cause of action for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

### 1.     Breach of the Cooperation Clause

Under California law, a cooperation clause is a "condition of a policy requiring the cooperation and assistance of the [insu]red in opposing a claim or an action lodged against him by an injured person . . . .Without such cooperation and assistance the insurer

is severely handicapped and may in some instances be absolutely precluded from advancing any defense." *Truck Ins. Exch. v. Unigard Ins. Co*., 79 Cal. App. 4th 966, 975-76 (2000) (quoting *Valladao v. Fireman's Fund Indem. Co*., 13 Cal. 2d 322, 328-32 (1939)).  A cooperation clause allows insurers to "possess [themselves] of all knowledge . . . in regards to facts, material to [their] rights, to enable [them] to decide upon [their] obligations, and to protect [themselves] against false claims." *Id.* at 976 (citation omitted).  "Where an insured violates a cooperation clause, the insurer's performance is excused if its ability to provide a defense has been substantially prejudiced." *Id.* (citing *Campbell v. Allstate Ins. Co*., 60 Cal. 2d 303, 305 (1963) ("An insurer may assert defenses based upon a breach by the insured of a condition of the policy such as a cooperation clause, but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby.")).

"As a federal court sitting in diversity [over Plaintiff's California state law claims], '[the court] must apply the substantive law of California, as interpreted by the California Supreme Court.'" *Moore v. Mars Petcare US, Inc*., 966 F.3d 1007, 1016 (9th Cir. 2020) (quoting *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1103 (9th Cir. 2013)).

District courts in this circuit are divided on whether breach of a cooperation clause is merely a defense to liability in an insurance coverage dispute or whether it may constitute an independent breach of contract cause of action.  *See Lennar Mare Island, LLC v. Steadfast Ins. Co*., 139 F. Supp. 3d 1141, 1161-62 (E.D. Cal. 2015) (the insurer must pursue its cooperation clause theories as a defense and not as an affirmative contract claim), *with Sierra Pac. Indus. v. American States Ins. Co.,* 883 F. Supp. 2d 967, 976 (E.D. Cal. 2012) (denying dismissal of breach of contract claim premised on a breach of the cooperation clause as well as a duty to defend).

District courts that hold that a cooperation clause cannot create a cause of action rely on an unpublished Ninth Circuit case stating, "California courts have long characterized the insured's duty to cooperate as a condition precedent to coverage, not as a basis on which to assert an independent cause of action." *Ins. Co. State of Penn. v*

*Roman Catholic Archbishop of L.A.*, 227 Fed. App'x 643, 644 (9th Cir. 2007); *Lennar Mare Island, LLC*, 139 F. Supp. 3d at 1161-62; *Weber Distrib., LLC v. RSUI Indem. Co.*, Case No. LA CV17-09238 JAK (AGRx), 2018 WL 5274615, at *20-21 (C.D. Cal. Aug. 2, 2018) (rejecting insurer's breach of contract cause of action based on insured's breach of a cooperation clause).

On the other hand, district courts that hold that breach of a cooperation clause is an independent breach of contract claim reject the unpublished Ninth Circuit reasoning in *Roman Catholic Archbishop of L.A.* as not persuasive and rely on the California Supreme Court case of *Kransco v. American Empire Surplus Lines Ins. Co.,* 23 Cal. 4th 390, 400-02 (2000) where it noted that the "duty of good faith and fair dealing in an insurance policy is a two-way street, running from the insured to his insurer as well as vice versa." *See Landmark American Ins. Co. v. Taisei Const. Corp.*, CASE NO. CV 16-9169-R, 2017 WL 5640559, at *2 (C.D. Cal. Aug. 14, 2017)  (although many courts have concluded otherwise, "California law permits an independent claim, rather than simply a defense, for breach of a cooperation clause" because "duties owed by parties under insurance policies are a two-way street"); *Travelers Indem. Co. of Connecticut v. Centex Homes*, No. 1:14–CV–451–LJO–GSA, 2014 WL 2801050, at *2 (E.D. Cal. June 19, 2014) ("Centex has not cited (and the Court is unaware of) any binding California precedent holding that an insured's breach of a cooperation clause cannot, as a matter of law, form the basis of an insurer's breach of contract claim."); *Travelers Indem. Co. of Conn. v. Centex Homes*, No. 1:14–CV–217–LJO, 2014 WL 2002320, at *5 (E.D. Cal. May 15, 2014); *Travelers Prop. v. Centex Homes*, No. C 1002757 CRB, 2011 WL 1225982, at *6 (N.D. Cal. Apr.1, 2011); *Sierra Pac. Indus.,* 883 F. Supp. 2d at 976. While these cases that support a breach of contract claim assert that it is unaware of "any binding California precedent holding that an insured's breach of a cooperation clause cannot, as a matter of law, form the basis of an insurer's breach of contract claim,"  *see Centex Homes*, 2014 WL 2801050, at *2, on the flip side, there is no binding authority by

the California Supreme Court that an insured's breach of a cooperation clause can, as a matter of law, form the basis of an insurer's breach of contract.

In support of its opposition, Travelers misinterprets a number of California state appellate and California Supreme Court cases and argues that these courts have consistently held that an insured's failure to comply with a policy's cooperation clause constitute a breach of the insurance contract.  (Dkt. No. 35 at 12.)  Travelers argues that because these California courts use the term "breach of the cooperation clause", it necessarily supports an independent "breach of contract" action.  But the cases cited by Travelers support the contrary conclusion that a breach of a cooperation clause supports the insurer's affirmative defense against liability, not an independent basis for a claim. *See Hall v. Travelers Ins. Co*., 15 Cal. App. 3d 304, 308 (1971) ("In a suit by an injured party who has obtained a judgment against its insured, an insurer may assert defenses based upon a breach by the insured of a condition of the policy, such as the cooperation clause."); *Allstate Ins. Co. v. King*, 252 Cal. App. 2d 698, 705-06 (1967) (discussing breach of cooperation clause as a defense during trial).

In *Vallado v. Fireman's Fund Indemnity Co*., 13 Cal. 2d 322, 328 (1939), the California Supreme Court did not recognize a breach of contract based on a breach of a cooperation clause; instead it addressed whether the insurer's counsel's withdrawal based on the insured's breach of the cooperation clause was supported by the record noting that "the indemnity company set up as an affirmative defense a breach by McClure and Davis of the cooperation clause in the policy of insurance."  *Id.* at 328.  These cases do not support Travelers' argument that breach of a cooperation constitutes an independent breach of contract claim.

After careful analysis, the Court is persuaded by the reasoning in *Lennar Mare Island, LLC*, 139 F. Supp. at 1161-62.  While district courts have relied on *Kransco* to support their reasoning that a breach of cooperation clause can constitute an independent breach of contract cause of action, in *Lennar Mare Island*, the district court explained that *Kransco* distinguishes between an insurer's and an insured's position in a contract action.

*Id.* at 1162 (citing *Kransco*, 23 Cal. 4th at 401-02). "Both insurers and insureds owe one another a duty of good faith and fair dealing, but only an insured may pursue tort remedies for breaches of this duty. In addition, an insured's breach of a cooperation clause does not excuse the insurer's duty of good faith and fair dealing; 'the insurer's duty is unconditional and independent of the insured's contractual obligations.'" *Id.* (internal citations omitted). These distinctions by the California Supreme Court suggest that an insurer must assert "cooperation-clause theories in a defensive rather than an offensive posture." *Id. Kransco* further explained, "[b]ut the scope of the insured's duty of good faith and fair dealing, and the remedies available to the insurer for a breach of that duty, are fundamentally and conceptually distinct from the insurer's reciprocal duty, and the remedies available to the insured for breach of that duty, under the insurance policy." *Kransco*, 23 Cal. 4th at 402. The Court finds that this distinction limits a breach of cooperation clause to be relied upon as an affirmative defense rather than an independent cause of action. The court in *Kransco* explained that an insured's breach of a cooperation clause does not excuse an insurer's duty of good faith and fair dealing. *Id.* at 402. The Court does not read *Kransco* as supporting a conclusion that a breach of a cooperation clause can constitute an independent breach of contract claim. Accordingly, the Court GRANTS the Newlins' motion to dismiss the breach of contract cause of action as it relates to the cooperation clause.

### 2. Breach of the Insuring Agreements

In its opposition, Travelers also alleges a breach of the insuring agreement based on its right to control the defense, including the right to defend through counsel of the insurer's own choosing. The FAC alleges that the Newlins breached the insuring agreements by failing to allow Travelers the right to control the defense by selecting counsel of its choice. (Dkt. No. 5, FAC ¶ 34.) In reply, the Newlins explain that the FAC has not alleged that the insured breached the insuring agreements because an insured is not required to accept the insurer's choice of counsel in a conflict of interest situation. (Dkt. No. 42 at 8-9.) The Newlins raise factual issues as to whether there was,

in fact, a conflict of interest situation and whether Travelers was substantially prejudiced. Such factual disputes are not properly raised in a motion to dismiss.  Accordingly, the Court DENIES Defendants' motion to dismiss the breach of contract claim as it relates to the insuring agreements.

### 3.   Damages

The Newlins also argue that Travelers has failed to allege actual damages to support a cause of action for breach of contract as the FAC only summarily alleges that it "has been damaged in a sum according to proof at trial."  (Dkt. No. 15-1 at 13.)  Plaintiff responds that because the Newlins impeded with its ability to provide them with a defense, it was relieved of its obligation under the policies.  (Dkt. No. 35 at 15.)  In addition, Travelers explains in its opposition that it had to retain Bohm Wildish to represent and defend the Newlins as well as other costs.  However, these allegations about counsel fees are not in the FAC.

As to damages, the FAC alleges that due to the breaches of the policies, Travelers "has been damaged in a sum according to proof at trial and including, but not limited to, a denial of policy benefits."  (Dkt. No. 5, FAC ¶ 35.)  "Under California law, a breach of contract claim requires a showing of appreciable and actual damage."  *Aguilera v. Pirelli Armstrong Tire Corp*., 223 F.3d 1010, 1015 (9th Cir. 2000) (citing *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable.")).  A claim for nominal damages, speculative harm, or fear of future harm, without a showing of actual damages, does not suffice.  *Aguilera*, 223 F.3d at 1015; *Ruiz v. Gap*, Inc., 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).  Plaintiff has not provided any legal authority that a denial of policy benefits constitutes "actual damages" for a breach of contract claim.  However, in its opposition, in the event the Court grants dismissal of the claim, it requests leave to amend.

Because the FAC fails to sufficiently allege actual damages, the Court GRANTS the Newlins' motion to dismiss the breach of contract claim for failure to state a claim.

Because Plaintiff may be able to allege actual damage, the Court GRANTS Travelers leave to file a second amended complaint.

**D.    Newlins, Quade and AIG's Motions to Dismiss the Declaratory Relief Claims**

All Defendants move to the dismiss the declaratory relief claims alleged against them in the first, third, fourth and fifth causes of action as reactive and improper forum-shopping.  (Dkt. Nos. 13, 15.)  Plaintiff responds that because the Court has independent jurisdiction over the breach of contract claims, the Court must retain jurisdiction over the declaratory relief claims.  (Dkt. Nos. 32, 33.)  Alternatively, Travelers disputes Defendants' argument that the FAC is reactive and improper forum-shopping.

The Declaratory Judgment Act ("DJA"), provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The phrase "case of actual controversy" under the DJA refers to Article III's "Cases" and "Controversies" for justiciable claims.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 1919, 126-27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 225, 240 (1937)); *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (an actual controversy under the DJA is identical to Article III's constitutional case or controversy requirement).  To constitute a case or controversy, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273 (1941)).  Without a "case or controversy", the Court lacks subject matter jurisdiction under Rule 12(b)(1).  *Fleck and Assoc., Inc. v. Phoenix, an Arizona Mun. Corp.,* 471 F.3d 1100, 1103–04 (9th Cir. 2006).

The Court conducts a two-step inquiry as to whether it should exercise DJA jurisdiction.  First, the district court must "inquire whether there is an actual case or

controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citation omitted); *Kearns*, 15 F.3d at 143 (noting there are two distinct inquiries). Once the first part has been met, the district court must, using its discretion, next decide, using the factors in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942) whether to exercise its jurisdiction. *Id.* Essentially, the district court "must balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

The movants do not address the first factor but the Court is mandated to do so. *See Kearns*, 15 F.3d at 143 ("First, the court must inquire whether there is a case of actual controversy within its jurisdiction."). On the first question, there is an actual case or controversy raised by Travelers. A case or controversy exists where an insurer brings a declaratory judgment action to determine whether it had a duty to defend and to indemnify the insured. *Id.* at 144 (citing *Aetna Casualty and Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992) ("We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage.")); *Maryland Casualty*, 312 U.S. at 273-74 (holding there was an actual controversy for an insurer's declaratory judgment action regarding its duty to defend and indemnify even when the underlying liability action in state court had not yet proceeded to judgment).

Next, the Court considers whether it should exercise its discretion and assert jurisdiction over the DJA claims. The Supreme Court, in *Brillhart,* and the Ninth Circuit, in *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998), identified a number of prudential factors for the Court to consider in deciding whether to exercise jurisdiction. This determination is discretionary for the DJA is "deliberately cast in terms of permissive, rather than mandatory, authority" and the DJA "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Id.* at 1223 (citation omitted); *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) ("The exercise of jurisdiction under the Federal Declaratory Judgment Act, 28

U.S.C. § 2201(a), is committed to the sound discretion of the federal district courts."). "If . . . the court . . . is asked to decline to entertain [a declaratory relief action] by a party, then it must explain the basis for its decision on the record." *Dizol*, 133 F.3d at 1221.

Under *Brillhart,* district courts "should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* at 1225. The three "*Brillhart* factors remain the philosophic touchstone" for the [ ] analysis. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011). In addition, other relevant factors include,

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (citation omitted). "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id.* at 1225 (citing *Chamberlain*, 931 F.2d at 1366-67). However, the pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. *Id.* "Nonetheless, federal courts should generally decline to entertain reactive declaratory actions." *Id.* "Indeed, when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief" in order to avoid piecemeal litigation. *Id.* at 1225-26 (citing *Chamberlain*, 931 F.2d at 1367).

1    Travelers argues that its claim for breach of contract based on diversity provides

2 the Court with an independent basis for jurisdiction and the Court is without discretion to

3 decline to exercise jurisdiction over the declaratory relief claims.  In reply, Defendants

4 merely argue that because the Newlins demonstrated that the breach of contract should be

5 dismissed for failure to state a claim, Travelers' argument fails.

6    "Claims that exist independent of the request for a declaration are not subject to the

7 Declaratory Judgment Act's discretionary jurisdictional rule . . . Remanding only the

8 declaratory component of such an action will frequently produce piecemeal litigation."

9 *Snodgrass v. Provident Life & Accidental Ins. Co*., 147 F.3d 1163, 1167 (9th Cir. 1998).

10 "The appropriate inquiry for a district court in a Declaratory Judgment Act case is to

11 determine whether there are claims in the case that exist independent of any request for

12 purely declaratory relief, that is, claims that would continue to exist if the request for a

13 declaration simply dropped from the case."  *United Nat'l Ins. Co. v. R&D Latex Corp*.,

14 242 F.3d 1102, 1112 (9th Cir. 2001) (quoting *Snodgrass*, 147 F.3d at 1167-68).

15    Here, as discussed above, because the Court grants dismissal of the breach of

16 contract claim, the Court is not mandated to retain jurisdiction over the remaining DJA

17 claims.  However, because Travelers is granted leave to amend to properly allege

18 damages for breach of contract, and if plausibly alleged, it could provide the Court with

19 an independent basis for diversity jurisdiction as alleged in the FAC.  (Dkt. No. 5, FAC ¶

20 6.)  Diversity jurisdiction exists where a civil action is between citizens of different

21 states, and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  The parties

22 are alleged to be diverse.  However, the Court notes that if damages had been sufficiently

23 alleged, the amount in controversy of $75,000 is not clearly alleged.  The FAC alleges

24 Travelers has been damaged "in a sum according to proof at trial and including, but not

25 limited to, a denial of policy benefits."  (Dkt. No. 5, FAC ¶ 35.)  However, in addressing

26 whether it had sufficiently alleged damages for breach of contract, Travelers explains that

27 it incurred costs of retaining Bohm Wildish to represent and defend the Newlins.  (Dkt.

28 No. 35 at 15.)  This involved Bohm Wildish's multiple attempts to associate in during the

Hamadeh Litigation.  (*Id.* (citing Dkt. No. 16, Newlins' Counterclaim ¶¶ 40-44, 46-48).)
However, it is not clear these communications by Bohm Wildish cost Travelers $75,000
in damages.  Therefore, when Travelers files the second amended complaint, it must
allege the $75,000 amount in controversy in order for this Court to have diversity
jurisdiction over breach of contract claim.

Because the breach of contract claim has been dismissed, "the Court is not required
to accept jurisdiction over the . . . declaratory judgment claim[s]."  *See e.g., Powelson v.
St. Paul Fire and Marine Ins. Co.*, No. CV–04–665–ST, 2004 WL 1792465, at *4 (D. Or.
Aug. 11, 2004) (on motion to remand, no diversity jurisdiction because defense costs
which the plaintiff had incurred in underlying litigation was less than the amount in
controversy and insurer did not produce any evidence to rebut the Powelsons' sworn
testimony that less than $75,000 had been spent to date).

The Court next considers whether it should exercise its discretion over the DJA
claims in view of the *Brillhart* factors.

### 1.      Forum Shopping and Reactive Declaratory Judgment Actions

Defendants argue that the Court should not exercise its discretionary jurisdiction
over the declaratory relief complaint because Travelers' claims against Defendants are
reactive, constitutes improper forum shopping and are not intended to resolve disputes
that may result in future litigation but are solely based on past events and already accrued
rights of subrogation, indemnity and contribution by AIG and outstanding defense and
indemnity obligation by the Newlins against Travelers.  (Dkt. No. 13-1 at 11-12; Dkt. No.
15-1 at 18-21.)  The relief Travelers seeks does not clarify any of its future defense or
indemnity obligations towards the Newlins or AIG in the Hamadeh Litigation but is
solely limited to establishing its affirmative defenses to Defendants' already accrued
claims against Travelers.

Travelers rebuts Defendants' claim and argues that its claims are not solely based
on past events as Defendants continue to demand policy benefits and California courts
encourage insurers to file declaratory relief actions in these circumstances citing *Truck*

*Ins. Exchange v. Superior Ct.,* 51 Cal. App. 4th 985, 995 (1996); *Great American Ins. Co. v. Superior Ct*., 178 Cal. App. 4th 221, 234 (2009).  (Dkt. No. 35 at 17-19; Dkt. No. 36 at 7-8.)  Travelers asserts it has not admitted any outstanding defense and indemnity obligations but instead contends that the Newlins' breach of the CCL Policies extinguished Travelers from its obligations under the policies and it owes no duty to make payments to anyone.  (*Id.*)  Moreover, the Newlins and Quade have no valid causes of action as AIG covered their defense and cannot recover from another insurer.  (Dkt. No. 35 at 18.)  Finally, Travelers did not "race to the courthouse" seeking declaratory judgment to avoid litigation in a forum not of its choosing because there is no pending state action involving the parties and it has alleged an independent breach of contract claim over which the Court has jurisdiction.  (Dkt. No. 35 at 19; Dkt. No. 36 at 8.)

The second *Brillhart* factor favors "discouraging an insurer from forum shopping." *Am. Cas. Co. of Reading, Pa. v. Krieger*, 181 F.3d 1113, 1118 (9th Cir. 1999); *Dizol*, 133 F.3d at 1225 ("federal courts should generally decline to entertain reactive declaratory actions").  This second factor has also been described as relating to "the 'defensive' or 'reactive' nature of a federal declaratory judgment suit," and the Ninth Circuit has stated that "if a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise discretion."  *Cont. Cas. Co. v. Robsac Indus*., 947 F.2d 1367, 1372 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d at 1220 (citing *Transamerica Occidental Life Ins. Co. v. Digregorio*, 811 F.2d 1249, 1254 n.4 (9th Cir. 1987)).  Forum shopping occurs when a party files a federal declaratory judgment suit "to see if it might fare better in federal court at the same time the insurer is engaged in a state court action."  *Krieger,* 181 F.3d at 1119.  Courts look to the "sequence of events" leading to a federal action to determine if a party has engaged in forum shopping.  *See* Int'l *Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995) ("This sequence of events alerts us to be on guard for ties between the state and federal actions, because the *Declaratory Judgment Act* is not to be used either for tactical advantage by litigants or to open a new portal of entry to federal court for suits that are essentially

20cv765-GPC(DEB)

defensive or reactive to state actions." (emphasis in original).)  In *Robsac,* the court found that the plaintiff engaged in forum shopping by filing a federal action in response to pending non-removable state court proceedings.  *Robsac*, 947 F.2d at 1371.

In *Robsac* the Ninth Circuit held the district court should not exercise its diversity jurisdiction in a declaratory judgment action to resolve a dispute between insurer and insured over coverage when a state court action involving the same parties and the same issue of coverage was already pending but it explained that "[r]eactive litigation can occur in response to a claim an insurance carrier believes to be not subject to coverage even though the claimant has not yet filed his state court action: the insurer may anticipate that its insured intends to file a non-removable state court action, and rush to file a federal action before the insured does so."  *Id.* at 1372.  "Whether the federal declaratory judgment action regarding insurance coverage is filed first or second, it is reactive, and permitting it to go forward when there is a pending state court case presenting the identical issue would encourage forum shopping in violation of the second *Brillhart* principle."  *Id.* at 1372-73.  Therefore, an insurer's filing of a preemptive declaratory relief complaint is "reactive" when the insurer fears that its insured will file a non-removable state court action against it and races to the federal courthouse before the insured filed its suit.

Here, based on the procedural posture of this case, this declaratory judgment action could be deemed "reactive" because Travelers filed it in response to Defendants' demand for payments of fees and costs incurred during the Hamadeh Litigation.  (Dkt. No. 5, FAC ¶ 34.)  As explained by Defendants, Travelers knew it was exposed to AIG Property's subrogation, indemnity and/or contribution claims as well as the Newlins' breach of contract and bad faith claims, (*id.*, FAC ¶¶ 17-23).  It also knew that AIG had accrued subrogation and indemnity claims against CCL Contracting, Travelers' named insured and a California resident, based on CCL Contracting's separate contract with the Newlins and they were also additional insureds under the CCL Policies.  Therefore, Plaintiff knew that it and CCL Contracting were in danger of being named as defendants

in a state court proceeding by the Newlins and/or AIG and because CCL Contracting's presence would make the state court action non-removable, Travelers filed the instant "reactive" declaratory relief complaint.  (Dkt. No. 13-1 at 18-19; Dkt. No. 15-1 at 25-26.)

Travelers does not dispute these arguments except to state that it has alleged a breach of contract claim which provides this Court with independent jurisdiction; however, that argument fails based on the Court's dismissal of the breach of contract claim.  Second, Travelers claims it was not engaged in forum shopping and there was no race to the courthouse because there is no pending state court action involving the parties. The Court disagrees.  The Ninth Circuit has explained "[r]eactive litigation can occur in response to a claim an insurance carrier believes to be not subject to coverage even though the claimant has not yet filed his state court action: the insurer may anticipate that its insured intends to file a non-removable state court action, and rush to file a federal action before the insured does so." *Robsac,* 947 F.2d at 1372.  Therefore, the absence of a parallel action is not dispositive of whether Travelers was engaged in forum shopping or reactive litigation.  The Court concludes that the declaratory judgment suit is reactive in nature and does not support the Court exercising its discretion to assert jurisdiction over the DJA claims.

## 2.    Avoiding Needless Determinations of State Law Issues

Defendants make a summary argument that proceeding with this "parallel" federal proceeding would be a waste of judicial resources and would needlessly entangle federal and state courts without addressing how this case is parallel with any pending state court proceeding.  (Dkt. No. 13-1 at 19; Dkt. No. 15-1 at 27.)  Plaintiff responds that there is no pending parallel state court proceeding involving the same issues and parties.  (Dkt. No. 35 at 21; Dkt. No. 36 at 10.)  In reply, Defendants assert that the Court should dismiss the declaratory relief claims and those same claims should "be raised and resolved as affirmative defenses in connection with the Newlins', Quade's and AIG Property's pending affirmative actions."  (Dkt. No. 40 at 11; Dkt. No. 42 at 17.)  Yet, Defendants do not explain the existence of "pending affirmative actions."

Nonetheless, "[t]he question before the Court in this case is not whether it *could* adjudicate the state law insurance coverage issue, but whether such adjudication would be 'needless' because that issue could be adjudicated in the pending state court proceeding." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Aero Jet Services, LLC*, No. CV–11–01212–PHX–DGC, 2011 WL 4708857, at *3 (D. Az. Oct. 7, 2011).  In *Hungerford*, on appeal of a summary judgment motion in favor of the insured in a declaratory judgment action brought by the insurer, the Ninth Circuit held that the district court improperly exercised its discretionary jurisdiction in hearing the declaratory judgment action.  *American Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012 (9th Cir. 1995), *overruled on other grounds by Dizol*, 133 F.3d at 1220.  When the declaratory relief complaint was filed in *Hungerford*, there was a pending state court action but the federal and state cases were not identical.  *Id.* at 1016.  The state court action was a class action brought by the limited partners against the officers and directors of certain companies.  *Id.*  American National, the insurer, was not a party to that action and could not, under California law, have been joined as a party or had the issue of insurance coverage heard in the state court proceedings.  *Id.*  In arriving at its holding that the district court should have not exercised jurisdiction over the declaratory relief claims, it relied on the Sixth Circuit case of *Allstate Ins. Co. v. Mercier*, 913 F.2d 273 (6th Cir. 1990).  *Id.* at 1016.  "The Sixth Circuit acknowledged that the two proceedings in question were not parallel in all respects, that the petitioner was not and could not be a party to the state court action. The court concluded, however, that an insurer's inability to join directly in the related underlying tort litigation did not preclude the denial of federal court jurisdiction to the insurer in its separate declaratory relief claim." *Id.* at 1016-17. In *Mercier*, the Sixth Circuit noted that the state and federal cases were sufficiently parallel due to the similar underlying facts of each case and explained that a sufficient remedy existed in state court for the insurer.  *Id.* at 1017.  Because the state had a procedure for obtaining a declaration of the rights, the insurer should have presented these issues in a separate action to the same court that would decide the underlying tort

action.  *Id.*  In conclusion, the *Hungerford* court stated, "when an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court, the state court is the more suitable forum for a petitioner to bring a related claim."  *Id.*  California provides for similar state remedy for an insurer seeking a declaration of its rights under its insurance policies.  *See* Cal. Civ. Proc. Code § 1060.[2]  The court also found relevant, as in *Mercier*, that the record before the federal court was devoid of facts and any facts required to resolve the insurance coverage dispute "could only have been developed through the state court proceeding."  *Id.*  "Given that these other legal questions ultimately involve interpretations of state law related to a factual dispute pending before the state court in the [state tort] litigation, we agree with the Sixth Circuit that "the [state] court would be in a superior position to address the legal issues on which [the insurer] seeks a declaration of rights."  *Id.*  In a later case, the Ninth Circuit concluded that "the dispositive question is not whether the pending state proceeding is 'parallel,' but rather, whether there was a procedural vehicle available to the insurance company in state court to resolve the issues raised in the action filed in federal court."  *Polido v. State Farm Mutual Auto. Ins. Co.*, 110 F.3d 1418, 1423 (9th Cir. 1997), *overruled on other grounds by Dizol*, 133 F.3d at 1220.

In this case, the parties acknowledge there is a pending state court cross-complaint by the Newlins against CCL Contracting but neither party addresses its significance or impact on this case.  The pending state court cross-complaint by the Newlins against

---

[2] Cal. Civ. Proc. Code § 1060 provides, "[a]ny person interested under a written instrument . . .or under a contract, or who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract."

CCL Contracting alleges a breach of contract claim.[3]  (Dkt. No. 50-2, CCL's RJN, Ex. A, Cross Complaint ¶¶ 58-76.)  It alleges that CCL Contracting breached the Santa Fe Irrigation District Contract and an Agreement Regarding Modifications to Property Owner's Water Facilities.  (*Id.* ¶¶ 59, 61.)  As third-party beneficiaries to the contracts, the Newlins claim that CCL Contracting breached the contracts by failing to obtain and pay for all permits and licenses required for the work.  (*Id.* ¶¶ 64, 66.)  As a result, the Newlins has been forced to defend causes of action concerning CCL Contracting's work in the underlying Hamadeh Litigation.  (*Id.* ¶ 68.)  The contract also provided that CCL Contracting was to defend and indemnify the Newlins in the event of all "claims, demands, causes of action, costs, expenses, liabilities, losses, damages or injuries, in law or equity."  (*Id.* ¶ 70.)  The Newlins tendered their defense to CCL Contracting on numerous occasions, and on October 6, 2017, CCL Contracting served its response and agreed to defend the Newlins subject to a full reservation of rights in response.  (*Id.* ¶ 72.)  The Newlins also alleged breach of contract based on failure to timely accept their tender of defense and indemnity.  (*Id.* ¶ 73.)

While the FAC, in this case, contains bare allegations concerning the underlying litigation, more facts can be gleaned from the third-party complaints and counterclaims.  (*See* Dkt. Nos. 14, 16, 17.)  The third-party complaints and counterclaims allege that when Quade tendered the Newlins' defense to CCL Contracting,[4] it received an email, on June 14, 2017, from Travelers acknowledging the receipt of the tender to CCL Contracting, and later, on July 14, 2017, received an email from the firm of Diederick & Associates indicating they had been retained by Travelers to represent CCL Contracting.  (*See e.g.*, Dkt. No. 16, TPC/Counterclaim ¶¶ 32, 33, 35, 37.)  On October 6, 2017

---

[3] The cross-complaint also alleges negligence against CCL Contracting as well as damages for express indemnity, equitable indemnity, total indemnity, comparative equitable indemnity, contribution, apportionment and declaratory relief.  (Dkt. No. 50-2, CCL's RJN, Ex. A, Cross Complaint ¶¶ 83-92; ¶¶ 127-56.)

[4] It appears that Quade separately tendered the Newlins' defense to CCL on May 23, 2017 and to Travelers on August 3, 2017.  (Dkt. No. 16, Newlins' TPC/Counterclaim ¶¶ 32, 36.)

Travelers informed Quade that Travelers would defend the Newlins in the Hamadeh Litigation under a full reservation of rights and defenses under the CCL policies.  (*Id.* ¶ 37.)

Both the cross-complaint in state court and third-party complaint/counterclaim in this Court allege that, on October 6, 2017, Travelers agreed to defend the Newlins subject to a full reservation of rights. (*Compare* Dkt. No. 16, TPC/Counterclaim ¶ 37 *with* Dkt. No. 50-2, CCL's RJN, Ex. A, Cross Complaint ¶ 72.)  It is not clear but it appears that Travelers agreed to defend the Newlins on behalf of CCL Contracting based on the contract between CCL Contracting and the Newlins where CCL Contracting agreed to defend and indemnify the Newlins as well as under the CCL Policies where the Newlins are named as additional insureds.  Therefore, the pending cross-complaint remaining in state court involves similar underlying facts and possibly legal issues as in this case concerning Travelers' coverage responsibility in the underlying Hamadeh Litigation.  Therefore, the Court has concerns about entangling this Court's substantive rulings with the pending state court action that may have overlapping facts or legal issues.

Moreover, Travelers can seek the same declaratory relief in state court under section 1060 and have it relate to the underlying cross-complaint.  *See Hungerford*, 53 F.3d at 1018 ("Allowing [the insurer] to bring this petition in federal court would simply result in a waste of federal resources at every level of the decision making process. Any other holding, given the facts of this case, would result in the federal district court needlessly analyzing a state law issue that the state court is equally, if not better equipped to decide; it will also lead to the state and federal appellate courts reviewing claims arising from an identical set of facts even though the cases can easily be consolidated if filed within the same court."); *Polido*, 110 F.3d at 1422 ("differences in factual and legal issues between the state and federal court proceedings are not dispositive because the insurer 'could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying tort action.'"); *see also Allstate Ins. Co. v. Tucknott Elec. Co.*, No. 14-CV-01804 SC, 2014 WL 5408324, at *3 (N.D. Cal.

1   Oct. 23, 2014) (collecting cases) ("courts, including the Ninth Circuit, have dismissed

2   similar arguments, finding instead that the insurer could simply have filed a state court

3   action for declaratory relief and sought to relate the two matters.").

4        Here, because there is a pending cross-complaint in state court that are based on

5   the same underlying facts as in this case and section 1060 of the California Code of Civil

6   Procedure specifically provides for the same relief that Travelers seeks in this Court, the

7   Court finds this factor does not support retaining jurisdiction over this case.

8        **3.    Duplicative Litigation**

9        The final *Brillhart* factor considers whether exercising or abstaining from

10   jurisdiction in a federal action would pose a risk of duplicative litigation. *Krieger,* 181

11   F.3d at 1118.  "If there are parallel state court proceedings involving the same issues and

12   parties pending at the time the federal declaratory action is filed, there is a presumption

13   that the entire suit should be heard in state court." *Dizol*, 133 F.3d at 1225.  "Ordinarily it

14   would be uneconomical as well as vexatious for a federal court to proceed in a

15   declaratory judgment suit where another suit is pending in a state court presenting the

16   same issues, not governed by federal law, between the same parties." *Brillhart,* 316 U.S.

17   at 495.

18        Here, as explained above, there is pending litigation between the Newlins and CCL

19   Contracting that concern coverage that may involve Travelers and where the facts are

20   intertwined with the facts in this case.  Travelers can invoke California's declaratory

21   judgment statute section 1060 of the Civil Procedure Code to present the same issues to

22   the state court deciding the underlying cross-complaint by the Newlins against CCL

23   Contracting.  Therefore, retaining this case in federal court would be a waste of judicial

24   resources when the underlying action presents an adequate forum in state court.

25        Accordingly, after consideration of the *Brillhart* factors, in the interest of comity,

26   concerns of judicial administration and fairness to the parties, *see Chamberlain*, 931 F.2d

27   at 1367, the Court declines to exercise its discretion to consider the DJA claims, and

28   GRANTS Defendants' motion to dismiss the FAC.  However, because Travelers may be

able to allege an independent cause of action for breach of contract separate from the DJA claims, the Court GRANTS Travelers' leave to amend the breach of contract claim.[5]

**E.     Travelers' Motions to Dismiss Counterclaims filed by the Newlins and Quade**

Also before the Court are Travelers' two motions to dismiss the counterclaims against it filed by the Newlins and Quade pursuant to Rule 12(b)(6) which are fully briefed.  (Dkt. Nos. 32, 33, 46, 49.)  On August 31, 2020, CCL Contracting filed its motion to dismiss the third-party complaints filed by the Newlins, Quade and AIG which is not fully briefed.  (Dkt. Nos. 50, 51, 52.)  Because the counterclaims/third party complaints rely on the same facts, the Court DEFERS ruling on Travelers' motion to dismiss the counterclaim until the hearing on CCL Contracting's motion to dismiss set on November 13, 2020.

In addition, notwithstanding whether Travelers will file a second amended complaint, the Court DIRECTS the parties to address whether a stay or dismissal under one of the abstention doctrines is warranted in light of the pending state court action by the Newlins against CCL Contracting.  Defendants shall file a brief on or before **October 9, 2020** and Plaintiff shall file a response on or before **October 16, 2020.**

**Conclusion**

Based on the above the Court GRANTS Defendant the Newlins' motion to dismiss the breach of contract claim pursuant to Rule 12(b)(6) and GRANTS all Defendants' motion to dismiss the FAC pursuant to Rule 12(b)(1).  Plaintiff is granted leave to file a

/ / /

/ / /

/ / /

---

[5] In the event that Travelers files a second amended complaint which demonstrates the Court's independent jurisdiction over the breach of contract claim, the Court questions whether the case should be stayed pending the state court action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment . . . .").

second amended complaint within 10 days of the filed date of this order.

     IT IS SO ORDERED.

Dated:  September 14, 2020

                                Hon. Gonzalo P. Curiel
                                United States District Judge

20cv765-GPC(DEB)