UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY and BLYTHE NEWLIN, as individuals; QUADE & ASSOCIATES, PLC, a California professional liability company; AIG PROPERTY CASUALTY COMPANY, a Pennsylvania corporation, and DOES 1 through 10, inclusive,<br><br>Defendants<br><br>and Related Counterclaims and Third-Party Complaints. | Case No.:  20cv765-GPC(DEB)<br><br>**ORDER**<br><br>**1) GRANTING TRAVELERS' MOTIONS TO DISMISS THE COUNTERCLAIMS BY THE NEWLINS AND QUADE WITH LEAVE TO AMEND; AND**<br><br>**2) DENYING CCL'S MOTIONS TO DIMISS THE THIRD PARTY COMPLAINTS BY THE NEWLINS, QUADE AND AIG**<br><br>**[Dkt. Nos. 32, 33, 50, 51, 52.]** |

Before the Court are Plaintiff and Counterdefendant Travelers Indemnity Company of Connecticut's ("Travelers") motions to dismiss counterclaims filed by Anthony and Blythe Newlin (the "Newlins"), and Quade & Associates, PLC ("Quade") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. Nos. 32, 33.)  The Newlins and Quade jointly filed an opposition.  (Dkt. No. 46.)  Travelers filed a reply to the joint opposition.  (Dkt. No. 49.)  Before the Court are also Third-Party Defendant CCL

1

Contracting, Inc.'s ("CCL") motions to dismiss the third-party complaints pursuant to Rule 12(b)(6) filed by the Newlins, Quade and AIG Property Casualty Company, ("AIG").  (Dkt. Nos. 50, 51, 52.)  AIG filed an opposition.  (Dkt. No. 58.)  The Newlins and Quade filed a motion for joinder to AIG's opposition.  (Dkt. Nos. 61, 62.)  CCL filed a joint reply.  (Dkt. No. 70.)  Based on the reasoning below, the Court GRANTS Travelers' motion to dismiss the Newlins' and Quade's counterclaims with leave to amend and DENIES CCL's motion to dismiss the third-party complaints.

## Procedural Background

On April 22, 2020, Plaintiff Travelers filed a complaint alleging counts for declaratory relief against Defendants the Newlins, Quade and AIG, as well as a breach of contract claim against the Newlins based on facts arising from an underlying state court complaint in San Diego County Superior Court, Case No. 37-2017-00006963-CU-OR-NC entitled *Hamadeh et al. v. Newlins, et al.,* ("Hamadeh Litigation").  (Dkt. No. 1, Compl.)  The declaratory relief claims ask the Court to clarify Travelers' defense and indemnity obligations to the Newlins, Quade and AIG in the Hamadeh Litigation.  (*Id.*)  Travelers then filed a first amended complaint on May 1, 2020.  (Dkt. No. 5, FAC.)  On June 11, 2020, the Newlins and Quade filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), (Dkt. No. 15), and AIG filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Dkt. No. 13.)  On September 14, 2020, the Court granted the Newlins' motion to dismiss the breach of contract claims under Rule 12(b)(6) and granted the Defendants' motion to dismiss pursuant to Rule 12(b)(1) with leave to amend.[1]  (Dkt. No. 55.)  On September 24, 2020, Travelers filed a second amended complaint ("SAC").  (Dkt. No. 56.)  On October 13, 2020, the Newlins, Quade

---

[1] In its order, the Court directed supplemental briefing on whether a stay should be issued in the case due to the pending cross-complaint filed by the Newlins against CCL arising from the same underlying facts as this case.  (Dkt. No. 55 at 27.)  On October 9, 2020, AIG and CCL filed their supplemental briefs.  (Dkt. Nos. 63, 65.)  Quade and the Newlins filed a joinder with AIG's supplemental brief.  (Dkt. No. 64.)  On October 16, 2020, Travelers filed a response.  (Dkt. No. 69.)  The Court will not consider these arguments until after the pleadings have been settled.

and AIG filed motions to dismiss the SAC which is not yet fully briefed.  (Dkt. Nos. 66, 67.)

On June 11, 2020, the Newlins, AIG and Quade each separately filed a counterclaim against Travelers and each separately filed a third-party complaint against CCL ("collectively counterclaim/TPC").  (Dkt. Nos. 14, 16, 17.)  While Travelers filed an answer to AIG's counterclaim, (Dkt. No. 31), it filed the instant fully briefed motions to dismiss the Newlins and Quade's counterclaims.  (Dkt. Nos. 32, 33, 46, 49.)  CCL also filed the instant motions to dismiss the third-party complaints filed by the Newlins, AIG and Quade which are fully briefed.  (Dkt. Nos. 50, 51, 52, 58, 59, 60, 70.)

<strong>Factual Background</strong>

According to the Newlins' counterclaim/TPC, the Newlins were the owners of real property located at 16350 Via Del Alba, Rancho Santa Fe, California 92067 from late 2012 until February 2015.  (Dkt. No. 16, Newlins' Counterclaim/TPC ¶¶ 1, 7.)  During that time, the Newlins remodeled, repaired and/or modified two residences on the property as well as made repairs and improvements to the landscape, hardscape and irrigation system.  (*Id*. ¶ 8.)  In addition, CCL was contracted by the Santa Fe Irrigation District to perform certain work on the water infrastructure on the property and to move/install a new fire hydrant and to perform certain related site work.  (*Id.* ¶ 8.)

Around October 18, 2013, CCL submitted a bid to the Santa Fe Irrigation District for the "Group 2 Pipelines Project (J-1202)" which included work to be performed on the property while the Newlins were the owners.  (*Id.* ¶¶ 16-18.)  CCL was awarded the contract and on December 2, 2013, CCL signed the Santa Fe Irrigation District Contract.  (*Id.* ¶ 18.)  The Santa Fe Irrigation District Contract required CCL to procure certain insurance.  (*Id.* ¶¶ 19-21.)  As such, CCL purchased Commercial General Liability policies of insurance from Travelers for dates of coverage from April 1, 2014 – April 1, 2018 ("CCL Policies").  (*Id.* ¶ 29.)  Per the Santa Fe Irrigation District Contract, CCL named the Newlins as additional insureds on the CCL Policies.  (*Id.* ¶¶ 21, 31.)  The Contract required CCL to "defend . . . indemnify and hold District, its officials, officers,

agents, employees, owners of property upon which Contractor will perform Work . . . free and harmless from any claims . . . arising out of or incident to any acts, omissions or willful misconduct of Contractor . . ." (*Id.* ¶ 22.)  Per the Santa Fe Irrigation District project, the Newlins entered into an "Agreement Regarding Modifications to Property Owner's Water Facilities" ("Property Owner Contract") with the Santa Fe Irrigation District around October 8, 2013 concerning certain work on the water infrastructure systems that was located on the property.  (*Id.* ¶ 24.)  The Property Owner Contract also stated that CCL is to defend and hold harmless any claims arising out of the acts, omission or willful misconduct of the contractor.  (*Id.* ¶ 26.)  Around April 2014, CCL submitted a change order, approved by the Santa Fe Irrigation District, to relocate the fire hydrant to the end of the cul-de-sac on Via Del Alba.  (*Id.* ¶ 28.)

Around February 18, 2015, the Newlins sold the property to Bassim Hamadeh, Seidy Hamadeh and the Ravello Trust (collectively "Hamadeh plaintiffs").  (*Id.* ¶ 9.)  On February 24, 2017, the Hamadeh plaintiffs filed a complaint in San Diego Superior Court against the Newlins and others for negligent misrepresentation, negligence and breach of contract.  (*Id.* ¶ 10.)  On October 12, 2017, the Hamadeh plaintiffs filed a first amended complaint adding claims for fraud by concealment, intentional misrepresentation, negligence per se under California Business & Professions Code section 7028 *et seq.*, fraudulent inducement and negligence per se under California Civil Code section 1102 *et seq.* (*Id.*)  The Hamadeh Litigation arose from the Newlins' alleged intentional/negligent misrepresentation and/or concealment relied upon by the Hamadeh plaintiffs when they purchased the property concerning alleged defects with the modification and remodel work performed by the Newlins and/or on behalf of the Newlins.  (*Id.*)

AIG issued a homeowner policy to the Newlins for the policy period, November 29, 2014 to November 29, 2015, which provided liability coverage, including defense, for qualifying damages for property damage caused by an occurrence and subject to limitations and exclusions.   (*Id.* ¶ 7.)  The Newlins tendered their defense in the Hamadeh Litigation to AIG, its insurer, and it provided a full defense to the Newlins

under a reservation of rights.  (*Id.* ¶ 11.)  After the tender, AIG assigned panel counsel, Patrick J. Mendes, Esq. of Tyson & Mendes, LLP to defend the Newlins.  (*Id.* ¶ 12.)  In addition, AIG also agreed to fund the Newlins' retention of Michael W. Quade, Esq. of Quade & Associates, a PLC as independent counsel under California Civil Code section 2860.  (*Id.*)

Around May 23, 2017, after Quade transmitted to CCL a Notice of Tender of Defense and Demand for Indemnification and Notice of Claim demanding that CCL defend and indemnify the Newlins for claims made by the Hamadeh plaintiffs related to CCL's scope of work, CCL's counsel began communicating with Quade.  (*Id.* ¶ 32.)  On June 14, 2017, Quade received an email from "Ms. Barnes" of Travelers acknowledging receipt of the tender to CCL.  (*Id.* ¶ 33.)  On July 14, 2017, Ms. Donna Moore of the firm Diederich & Associates emailed Quade indicating she had been retained by Travelers to represent CCL.  (*Id.* ¶ 35.)

On August 3, 2017, Quade tendered the Newlins' defense directly to Travelers based on Newlins' status as additional insureds under the CCL policies.  (*Id.* ¶ 36.)  On October 6, 2017, Travelers sent a letter to Quade representing that Travelers would defend the Newlins in the Hamadeh Litigation under a full reservation of rights and defenses under the CCL policies.  (*Id.* ¶ 37.)  The rights reserved included the issue of "(1) whether the damages resulted from an 'occurrence,' a term defined in the CCL policies to mean, in pertinent part, 'an accident', and (2) the extent to which coverage is afforded under the Blanket Additional Insured Endorsements in the CCL policies which limit coverage to 'injury or damage . . . caused by acts or omissions' of CCL."  (*Id.*)  Further, the October 6, 2017 letter represented that coverage under the CCL policies to the Newlins as additional insureds was "excess."  (*Id.* ¶ 38.)  Travelers also identified Bohm Wildish LLP ("Bohm Wildish") as its chosen defense counsel and indicated that "if the Newlins wish to continue to retain Quade & Associates' services, they may do so, but at their own expense.  From today's date forward, Travelers will only pay for the

defense fees and costs incurred by Mr. Bohm.  Mr. Bohm will be contacting you shortly to discuss the handling of this matter."  (*Id.* ¶ 39.)

On October 19, 2017, Annie Won of Bohm Wildish sent Quade the first of three Notice of Association of Counsel forms, each of which contained incorrect information. (*Id.* ¶ 40.)  On November 1, 2017, Won wrote that this was her third attempt to associate into the matter and Quade had not responded to her numerous emails and calls and asked that she be contacted as soon as possible to discuss the matter.  (*Id.*)  Newlins' then-coverage counsel, Mr. Hilding, responded advising that having a third firm involved in the defense "would create a number of serious issues" including coordination amongst all three firms, giving the wrong impression to the jury, and based on her firm's errors in the association of counsel forms sent, "quality control" issues.  (*Id.* ¶ 41.)  Counsel further advised that AIG would be providing the defense through panel counsel and independent counsel and asked Ms. Won to inquire with Travelers about sharing in the cost of the defense.  (*Id.)*  On November 29, 2017, Ms. Won responded that she had not received an update from Travelers about her assignment to the case and reasserted that her office remains assigned counsel for the Newlins and requested that the files be sent to her so that she could associate into the case.  (*Id.* ¶ 42.)  The next day, Mr. Hilding emailed Ms. Won expressing his concern that Travelers had not yet responded to counsel it selected. (*Id.* ¶ 43.)  In response, Ms. Won referred Mr. Hilding to Sandy Ngo of Travelers and Mr. Hilding contacted her on November 3, 2017 by email and voicemail but Ms. Ngo never responded.  (*Id.* ¶ 44.)

On December 7, 2017, the Newlins filed a cross-complaint against CCL, and others, in the state court action for breach of contract, negligence, negligent misrepresentation, indemnity, contribution, apportionment and declaratory relief.  (*Id.* ¶¶ 13, 45.)  On January 17, 2019, Quade sent a letter to Ms. Ngo informing her of the January 24, 2019 mediation but no representatives of Travelers attended the mediation. (*Id.* ¶ 49.)  In January 2019, AIG funded a $900,000 settlement between the Newlins, the Hamadeh plaintiffs and all the Hamadeh cross-defendants except CCL.  (*Id.* ¶ 15.)  The

state court dismissed the Hamadeh complaint and the cross-complaints as to all cross-defendants except CCL.  (*Id.*)  During the Hamadeh litigation, AIG paid over $1.5 million in attorney fees on behalf of the Newlins to Tyson Mendes and Quade.  (*Id.* ¶ 14.) CCL and Travelers did not contribute to the defense or indemnification of the Newlins in the Hamadeh action.  (*Id*. ¶ 50.)

The Newlins' third-party complaint against CCL alleges a claim for breach of contract claim, (*id.* ¶¶ 57-62) and the counterclaim against Travelers asserts claims for breach of insurance contract, (*id.* ¶¶ 63-70), and breach of implied covenant of good faith and fair dealing, (*id.* ¶¶ 71-75).

The third-party complaint filed by Quade against CCL and counterclaim against Travelers allege almost identical facts as the Newlins counterclaim/TPC.  (Dkt. No. 17, Quade's Counterclaim/TPC.)  Quade additionally alleges that while AIG agreed to fund the Newlins' retention of Quade as independent counsel, California Civil Code section 2860 limits the rate of attorneys fees to $250/hour and the rate of paralegals to $125/hour. (*Id.* ¶ 15.)  Therefore, according to the legal services agreement between Quade and the Newlins, the Newlins are legally obligated to pay Quade the difference of its regular rates of $695/hour for partners, $450/hour for associates and $190/hour for paralegals.  (*Id.*) On June 10, 2020, the Newlins assigned all their rights under the legal services agreement with Quade to recover unpaid excess fees from CCL and/or Travelers while still retaining their own personal rights to pursue claims for emotional distress, punitive damages and attorney's fees incurred in recovering contractual benefits unreasonably withheld by Travelers.  (*Id.* ¶ 17.)  Quade alleges that CCL and Travelers are obligated to pay it the excess fees of about $1.7 million, plus interest.  (*Id.* ¶ 18.)  Quade asserts breach of contract against CCL, (*id.* ¶¶ 65-72), breach of contract-duty to defend-independent counsel against Travelers, (*id.* ¶¶ 73-76), and indemnity, equitable subrogation, waiver/estoppel against Travelers, (*id.* ¶¶ 77-81).

In AIG's third-party complaint against CCL and counterclaim against Travelers, it additionally claims that because CCL owed a primary obligation to defend and indemnify

the Newlins in the Hamadeh Litigation under the Santa Fe Irrigation District Contract and

the Property Owner Contract and refused to do so, (Dkt. No. 13, AIG's

counterclaim/TPC ¶¶ 57, 61), AIG instead paid the defense and indemnification of the

Newlins.  (*Id.*)  Because AIG paid for a loss which would otherwise borne by the

Newlins, it is subrogated to the Newlins' contractual and equitable rights against CCL.

(*Id.* ¶ 62.)  Therefore, AIG alleges equitable subrogation – express contractual indemnity

against CCL, (*id.* ¶¶ 56-64), equitable subrogation -contractual promise to procure

primary coverage against CCL, (*id.* ¶¶ 65-69), equitable subrogation – express

contractual indemnity against Travelers, (*id.* ¶¶ 70-75), equitable indemnity against

Travelers, (*id.* ¶¶ 76-78), equitable contribution – proportionate liability against CCL

Contracting, (*id.* ¶¶ 79-81), and equitable contribution – proportionate liability against

Travelers, (*id.* ¶¶ 82-84).

## Discussion

**A.     Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to

state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal

under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or

sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police

Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure

8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim

showing that the pleader is entitled to relief," and "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly,*

550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded

factual allegations as true, it contains enough facts to "state a claim to relief that is

plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend.  *See DeSoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B.    Travelers' Motions to Dismiss the Newlins' and Quade's Counterclaims**

       **1.    Newlins and Quade's Breach of Contract Claims**

Travelers moves to dismiss the Newlins and Quade's breach of contract claim because they have failed to allege a breach.  (Dkt. No. 32-1 at 11-23; Dkt. No. 33-1 at 12-20.[2])  In addition, Travelers moves to dismiss the Newlins' claim breach of contract for failing to allege damages resulting from the breach.  (Dkt. No. 32-1 at 11-12.)  The Newlins and Quade filed a joint response arguing that they have sufficiently alleged breach of the contracts for failing to defend and indemnify the Newlins and as a result, they suffered damages.  (Dkt. No. 46 at 11-25.)

---

[2] Page numbers are based on the CM/ECF pagination.

Under California law, the elements required for a cause of action for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Here, the parties do not dispute that Travelers' acknowledged its duty to defend the Newlins as additional insured under the CCL policies.  In fact, the counterclaim avers that Travelers agreed to defend the Newlins in the Hamadeh litigation and appointed defense counsel.  (Dkt. No. 16, Newlins' counterclaim/TPC ¶¶ 36-39; Dkt. No. 17, Quade's counterclaim/TPC ¶¶ 45-48.)  However, the parties diverge on whether there was a breach of the CCL contracts when Travelers' failed to appoint independent *Cumis* counsel due to a conflict of interest**.**

An insurer "must defend a suit which potentially seeks damages within the coverage of the policy."  *Gray v. Zurich Ins. Co*., 65 Cal. 2d 263, 275 (1966) (emphasis omitted).  "At the time an insurer accepts an insured's tender of defense, the insurer has an incentive to reserve a broad spectrum of coverage defenses in order to preserve its right to limit its obligation to indemnify to covered claims.  By giving notice to its insured, an insurer may agree to defend a suit subject to a reservation of rights.  In this manner, an insurer meets its obligation to furnish a defense without waiving its right to assert coverage defenses against the insured at a later time."  *Swanson v. State Farm Gen. Ins. Co*., 219 Cal. App. 4th 1153, 1162 (2013) (internal citations and quotations omitted).  "An insurer that owes a duty to defend an insured, arising because there exists a potential for liability under the policy, has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation."  *Id.* (citation and internal quotations omitted).

However, California Civil Code section 2860 ("section 2860") applies when a conflict of interest exists between the insurer and the insured.  Section 2860 codified the opinion in *San Diego Federal Credit Union v. Cumis Ins. Society, Inc*., 162 Cal. App. 3d 358, 364 (1985) which held that "if a conflict of interest exists between an insurer and its

insured, based on possible noncoverage under the insurance policy, the insured is entitled to retain its own independent counsel at the insurer's expense." *Fed. Ins. Co. v. MBL, Inc.*, 219 Cal. App. 4th 29, 41 (2013) (citing *Cumis Ins. Society, Inc.*, 162 Cal. App. 3d at 364). Section 2860 "'clarifies and limits' the rights and responsibilities of insurer and insured as set forth in *Cumis*." *James 3 Corp. v. Truck Ins. Exch.,* 91 Cal. App. 4th 1093, 1100 (2001). Section 2860 provides that,

> [i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured.

Cal. Civ. Code § 2860(a). In addition,

> a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

Cal. Civ. Code § 2860(b). The right to independent counsel at the insurer's expense does not exist in every case involving a conflict of interest nor does every reservation of rights entitle an insured to *Cumis* counsel. *James 3 Corp.*, 91 Cal. App. 4th at 1101.

The duty to provide *Cumis* counsel arises out of the attorney's close ties with the insurance company.

> The attorney, who typically has a long-standing relationship with the insurer and none with the insured (including little prospect of future work), may be forced to make numerous and varied decisions that could help one of his clients concerning insurance coverage and harm the other. [T]here has been recognition that, in reality, the insurer's attorneys may have closer ties with the insurer and a more compelling interest in protecting the insurer's position, whether or not it coincides with what is best for the insured. Consequently, in order to eliminate the ethical dilemmas and temptations

that arise along with conflict in joint representations, the insurer is required to provide its insured with independent counsel of the insured's choosing[.]

*Long v. Century Indem. Co*., 163 Cal. App. 4th 1460, 1469-70 (2008) (citations and quotations omitted).

An insured's right to independent counsel "depends upon the nature of the coverage issue, as it relates to the issues in the underlying case."  *Fed. Ins. Co*., 219 Cal. App. 4th at 42 (quoting *Blanchard v. State Farm Fire & Casualty Co.,* 2 Cal. App. 4th 345, 350 (1991)).  "[W]here the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel." *Id.* (quoting *Foremost Ins. Co. v. Wilks*, 206 Cal. App. 3d 251, 261 (1988).  "There is no such entitlement, for example, where the coverage issue is independent of, or extrinsic to, the issues in the underlying action [citation] or where the damages are only partially covered by the policy."  *Id.* (quoting *Dynamic Concepts, Inc. v. Truck Ins. Exch*., 61 Cal. App. 4th 999, 1006 (1998)); *Gafcon, Inc. v. Ponsor & Assocs*., 98 Cal. App. 4th 1388, 1421-22 (2002) ("It is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise.").

It is established that a conflict does not arise when an insurer provides a general reservation of rights.  *Gafcon, Inc*., 98 Cal. App. 4th at 1422; *Fed. Ins. Co.*, 219 Cal. App. 4th 29 at 47 (a general reservation of rights-where the insurer does not reserve its right to deny coverage under a particular policy exclusion-does not give rise to a conflict of interest).  Some examples of a conflict of interest requiring the insurer to provide independent counsel include: (1) "where the insurer reserves its rights on a given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel;" (2) "where the insurer insures both the plaintiff and the defendant;" (3) "where the insurer has filed suit against the insured, whether or not the suit is related to the

lawsuit the insurer is obligated to defend;" (4) "where the insurer pursues settlement in excess of policy limits without the insured's consent and leav[es] the insured exposed to claims by third parties;" and (5) "any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her representation of the one is rendered less effective by reason of his [or her] representation of the other." *James 3 Corp,* 91 Cal. App. 4th at 1101 (emphasis in original) (internal quotation marks and citations omitted).  The conflict of interest must be "significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts, Inc.*, 61 Cal. App. 4th at 1007.

Travelers argues that it fulfilled its obligations by accepting the Newlins' tender as additional insured under the CCL policies and appointed counsel to defend them in the Hamadeh Litigation and as the insurer, it had the right to control their defense.  (Dkt. No. 32-1 at 14-16; Dkt. No. 33-1 at 12-15.)  Travelers further asserts that the Newlins and Quade have failed to allege facts to show the Newlins were entitled to independent counsel.  (Dkt. No. 32-1 at 16-22; Dkt. No. 33-1 at 15-20.)  In opposition, the Newlins and Quade argue that they alleged that Travelers breached its defense obligations by failing to recognize the Newlins' right to independent counsel.  First, they argue that Travelers failed to recognize their right to independent counsel based on the actual conflict of interest created by Travelers' reservation of rights letter raising coverage issues.  (Dkt. No. 46 at 11-13 (citing Dkt. No. 16, Newlins' counterclaim/TPC ¶ 37; Dkt. No. 17, Quade's counterclaim/TPC ¶ 46).)  Second, they have alleged there was an actual conflict of interest because Travelers attempted to be on both sides of the dispute between the Newlins and CCL.  (Dkt. No. 46 at 13-19 (citing Dkt. No. 16, Newlins' counterclaim/TPC ¶¶ 35-48; Dkt.  No. 17, Quade's counterclaim/TPC ¶¶ 44-55).)  Third, Newlins and Quade have alleged there was a conflict of interest based on Travelers' provision of ineffective defense counsel.  (Dkt. No. 46 at 20-22 (citing Dkt. No. 16, Newlins' counterclaim/TPC ¶¶ 40-46; Dkt.  No. 17, Quade's counterclaim/TPC ¶¶ 49-55).)

On the first argument, there is a conflict of interest requiring independent counsel "where the insurer reserves its rights on a given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel." *James 4 Corp.,* 91 Cal. App. 4th at 1101.  Here, the Newlins and Quade allege that Travelers' reservation of rights included certain coverage issues.  (*See* Dkt. No. 16, Newlins' counterclaim/TPC ¶ 37; Dkt. No. 17, Quade's counterclaim/TPC ¶ 46.)  While Travelers argue that there was no *express* reservation of rights, on a motion to dismiss, the Court must accept as true the allegations in the complaint and draw all reasonable inference in favor of the Plaintiff. *See al-Kidd*, 580 F.3d at 956.  Here, the counterclaims sufficiently allege that Travelers reserved its right on certain coverage issues.  However, the counterclaims fail to claim that "the outcome of that coverage issue can be controlled by the insurer's retained counsel", *James 3 Corp*, 91 Cal. App. 4th at 1101, or that the reservation of rights are related to the issues in the underlying case, *Fed. Ins. Co.*, 219 Cal. App. 4th at 42. Instead, the counterclaims allege a conflict of interest based on concerns of "coordination amongst all three law firms, giving the wrong impression to the jury, and, based on her firm's errors in the Association of Counsel forms sent, 'quality control' issues." (Dkt. No. 16, Newlins' counterclaim/TPC ¶ 41; Dkt. No. 17, Quade's counterclaim/TPC ¶ 50.) The counterclaims fail to allege that the reservation of rights asserted concerning coverage were related to the underlying litigation.[3]  Therefore, Newlins and Quade's first argument concerning the right to independent counsel fails.

Second, the Newlins and Quade claim that there was a conflict of interest because Travelers attempted to be on both sides of the dispute between the Newlins and CCL. They maintain that Travelers would have been on both sides of the litigation between the Newlins and CCL because both are insureds under the same insurance policies and have

---

[3] The Court also notes that when the Newlins' defense was tendered to Travelers in August 2017, CCL was not yet named as a cross-defendant in the Hamadeh Litigation.  It was not until December 2017, when CCL was named as a cross-defendant when the Newlins filed their cross-complaint.

adverse interests.  (Dkt. No. 46 at 13-19.)  Travelers respond that it was not on both sides of the Hamadeh Litigation and that it had no duty to pay for the prosecution of the cross-complaint against CCL.  (Dkt. No. 49 at 5-6.)

The Newlins and Quade rely on the ruling in *O'Morrow v. Borad*, 27 Cal. 2d 794, 798 (1946), the California Supreme Court held the insurer cannot control both sides of the litigation even if different counsel are assigned.  *Id.*   In that case the insurer represented both drivers in a car accident, and the court explained that "under the terms of the policy contracts, the insurers have undertaken to pay any judgment rendered in favor of either the plaintiff or the cross-complainant; they, therefore, have a pecuniary interest in effecting a balance between the litigants and so conducting the litigation that neither party recovers against the other.  *Id.* at 798.

Travelers relies on the *MBL, Inc.* case where the federal government brought a CERCLA action against the property owners and lessees of a dry-cleaning facility suspected of causing soil and groundwater contamination to recover monitoring and remediation costs.  *MBL, Inc.,* 219 Cal. App. 4th at 33.  The owners and lessees subsequently filed third-party actions against, among others, MBL, Inc., the supplier of dry-cleaning products, seeking indemnity, contribution, and declaratory relief.  *Id.*  MBL, Inc. then filed a cross-claim which named several additional cross-defendants.  *Id*. at 35.  The court determined that MBL, Inc. was not entitled to independent counsel even though the insurers simultaneously represented MBL, Inc. and some other third-party defendants and cross-defendants because the parties were not "direct adversaries in the litigation."  *Id.* at 46-47.  Travelers also cite to *Centex* case where a group of homeowners brought a construction defect action against a developer for work performed by various subcontractors.  *Centex*, 237 Cal. App. 4th at 25-26. The developer then sued the subcontractors for indemnity, contribution, and repayment.  *Id.* at 26.  The court found that the insurer defending the developer and the subcontractors did not create an ethical conflict of interest requiring independent counsel.  *Id.* at 31.

1    While both sides present persuasive legal arguments, the allegations in the

2 counterclaims do not support a conflict based on an insurer being on both sides of the

3 litigation.  Even though the Newlins and Quade cite to their counterclaims, (Dkt. No. 16,

4 Newlins' counterclaim/TPC ¶¶ 35-48; Dkt. No. 17, Quade's counterclaim/TPC ¶¶ 44-57),

5 to support the conflict alleged that Travelers sought to be on both sides of the litigation,

6 (Dkt. No. 46 at 14), the allegations do not support such a conflict but describe the

7 communications between Newlins' then-coverage counsel and Travelers along with its

8 appointed counsel where the concern at the time involved the inconvenience of having a

9 third firm involved in the defense.  (Dkt. No. 16, Newlins' counterclaim/TPC ¶¶ 35-48;

10 Dkt. No. 17, Quade's counterclaim/TPC ¶¶ 44-57.)  Newlins' then-coverage counsel

11 sought Travelers' consent in sharing in the cost of the defense.  (Dkt. No. 16, Newlins

12 counterclaim/TPC ¶ 41.)  Therefore, the Court concludes that the Newlins and Quade's

13 counterclaims fail to allege that an actual conflict of interest existed sufficient to warrant

14 the appointment of *Cumis* counsel where the insurer represents both the plaintiff and

15 defendant.  *See James 3 Corp*., 91 Cal. App. 4th at 1101.

16    Third, the Newlins and Quade argue that they have alleged a conflict of interest

17 based on Travelers' selection of ineffective defense counsel.  They allege that Traveler's

18 proposed counsel failed on three instances in preparing a notice of association of counsel.

19 (Dkt. No. 16, Newlins' counterclaim/TPC ¶¶ 40-46; Dkt. No. 17, Quades'

20 counterclaim/TPC ¶¶ 49-55.)  They also allege that the proposed defense counsel did not

21 understand their ethical duties as insurer-appointed defense counsel.  (Dkt. No. 16,

22 Newlins' counterclaim/TPC ¶¶ 47-48; Dkt. No. 17, Quades' counterclaim/TPC ¶¶ 56-57.)

23 Travelers opposes.

24    The Newlins and Quade fail to provide any legal authority that typographical

25 errors in a notice of association of counsel or appointed defense counsel's failure to agree

26 that there was a conflict of interest demonstrate incompetent counsel for purposes of a

27 duty to defend.  They merely cite to general propositions of law that the "duty to defend

28 includes hiring competent counsel."  *J.B. Aguerre, Inc. v. American Guarantee & Liab.*

1  *Ins. Co.,* 59 Cal. App. 4th 6, 14 (1997); *see also Gray Cary Ware & Freidenrich v.*

2  *Vigilant Ins. Co*., 114 Cal. App. 4th 1185, 1189 (2004) ("this duty [to defend] includes

3  providing competent counsel and paying all reasonable and necessary costs.").  In *J.B.*

4  *Aguerre*, competent counsel includes "keep[ing] abreast of the progress and status of the

5  litigation in order that it may act intelligently and in good faith on settlement offers."  *Id.*

6  Here the allegation that there was an actual conflict of interest to warrant the appointment

7  of independent counsel due to proposed defense counsel's typographical mistakes and

8  failure to acknowledge a conflict are not persuasive or supported.

9      In sum, the Court GRANTS Travelers' motion to dismiss the Newlins and Quade's

10  breach of contract claim for failing to sufficiently allege a breach of the contracts.

11      **2.   Damages**

12      Travelers also argues that the Newlins have not alleged they have been damaged

13  by Travelers' alleged breach.  (Dkt. No. 32-1 at 11-12.)  In fact, the counterclaim alleges

14  they have not suffered any damages by the purported breach because AIG fully defended

15  them in the Hamadeh Litigation by paying over $1.5 million in attorneys fees and

16  $900,000 to settle the Hamadeh Litigation.  The Newlins respond that Travelers refused

17  to acknowledge the Newlins' right to independent counsel and refused to fund their

18  defense as provided by that counsel.  (Dkt. No. 46 at 23-24.)  As a result of the breach

19  and failure to recognize the right to Cumis counsel, Travelers has forfeited its ability to

20  take advantage of the section 2860(c) rate cap and accordingly, the Newlins incurred

21  economic loss in the amount of the difference between the section 2860(c) rates paid by

22  AIG and the value of reasonable attorneys' fees the Newlins were responsible for to

23  Quade.  (Dkt. No. 16, Newlins' counterclaim/TPC ¶ 54.)

24      "Under California law, a breach of contract claim requires a showing of

25  appreciable and actual damage."  *Aguilera v. Pirelli Armstrong Tire Corp*., 223 F.3d

26  1010, 1015 (9th Cir. 2000) (citing *Patent Scaffolding Co. v. William Simpson Const. Co.*,

27  256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not

28  actionable.")).  A claim for nominal damages, speculative harm, or fear of future harm,

without a showing of actual damages, does not suffice. *Aguilera*, 223 F.3d at 1015; *Ruiz v. Gap*, Inc., 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).  It is also the rule that an insured is entitled to only a single full defense, *Safeco Ins. Co. of America v. Parks,* 170 Cal. App. 4th 992, 1004 (2009), and an insurer that has borne the responsibility and cost of that defense is itself entitled to a sharing or contribution by the other responsible insurers, *see Continental Cas. Co. v. Zurich Ins. Co*., 57 Cal. 2d 27, 37 (1961); *Fireman's Fund Ins Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1289, 1295 (1998).  The measure of damages for any breach of the duty to defend are the "costs and attorneys fees expended by the insured in defending the underlying action." *Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp*., 130 Cal. App. 4th 1078, 1088-89 (2005).

Here, the Newlins allege they incurred economic loss in the amount of the difference between the section 2860(c) rates paid by AIG and the value of reasonable attorneys' fees the Newlins were responsible for to Quade.  (Dkt. No. 16, Newlins' counterclaim/TPC ¶ 54.)  However, in the Quade's counterclaim, it alleges that on June 10, 2020, the Newlins assigned to Quade all their rights under the legal services agreement between Newlins and Quade to recover unpaid excess fees from CCL and/or Travelers.  (Dkt. No. 17, Quade's counterclaim/TPC ¶ 17.)  Therefore, the Newlins cannot seek as damages the difference in the amount of attorney's fees to be paid to Quade.  Nonetheless, the Newlins further argue that they are still entitled to seek damages for emotional distress caused by Travelers' unreasonable refusal to fulfill its defense and indemnity obligations.  (Dkt. No. 46 at 25.)

However, the traditional rule is that emotional distress damages are not recoverable on a breach of contract claim.  *See Wynn v. Monterey Club*, 111 Cal. App. 3d 789, 799 (1980).  Moreover, the cases the Newlins cite to support emotional distress damages concern breach of the implied covenant of good faith and fair dealing, not a breach of contract claim.  (Dkt. No. 46 at 25.)  Accordingly, because the Newlin have not alleged damages to support an alleged breach by Travelers, the Court GRANTS Travelers' motion to dismiss the Newlins' counterclaim for breach of contract.

1    While Travelers did not move to dismiss Quade's breach of contract claim based
2    on damages, Quade, in the joint opposition, argues that it suffered damages, by means of
3    assignment from the Newlins, in the amount of the difference between the section
4    2860(c) rates paid by AIG and the reasonable rates the Newlins became legally
5    responsible for to Quade.  (Dkt. No. 46 at 25.)  Travelers, in reply, argues that while an
6    insurer may not take advantage of the rate cap in section 2860 if it did not meet its duty to
7    defend and accept tender of the insured's defense, in this case, because Travelers
8    accepted the Newlins' tender, it did not forfeit the benefits of section 2860.  Travelers
9    raises an issue of fact that is not amenable to determination on a motion to dismiss.
10   Therefore, the Court concludes that Quade has sufficiently alleged damages.

11   Based on the reasoning above, the Court GRANTS Travelers' motion to dismiss
12   the breach of contract claim in the Newlins' and Quade's counterclaims.

### 3.    Newlins' Breach of the Covenant of Good Faith and Fair Dealing

14   Travelers also moves to dismiss the counterclaim for breach of the covenant of
15   good faith and fair dealing filed by the Newlins.  (Dkt. No. 32-1 at 23-24.)  The Newlins
16   oppose.  (Dkt. No. 46 at 28-29.)

17   "California law implies a covenant of good faith and fair dealing in every
18   insurance contract." *Anguiano v. Allstate Ins. Co*., 209 F.3d 1167, 1169 (9th Cir. 2000)
19   (per curiam) (citing *PPG Indus., Inc. v. Transamerica Ins. Co*., 20 Cal. 4th 310, 312
20   (1999)).  "This duty extends to an insurance company's insureds," *Anguiano*, 209 F.3d at
21   1169, and "requires each contracting party to refrain from doing anything to injure the
22   right of the other to receive the benefits of the agreement," *Egan v. Mutual of Omaha Ins.*
23   *Co*., 24 Cal.3d 809, 818 (1979).  A breach of covenant of good faith and fair dealing
24   cannot survive absent any coverage under an insurance policy.  *Waller v. Truck Ins.*
25   *Exchange, Inc*., 11 Cal. 4th 1, 36 (1995); *Cybernet Ventures, Inc. v. Hartford Ins. Co. of*
26   *the Midwest,* 168 F3d. App'x 850, 853 (9th Cir. 2006) (quoting *Brizuela v. Calfarm Ins.*
27   *Co.,* 116 Cal. App. 4th 578, 594 (2004) ("A claim for breach of the covenant of good

28

20cv765-GPC(DEB)

1   faith and fair dealing cannot be maintained where a party is barred from bringing a claim

2   for breach of contract.")).

3        Here, the breach of the covenant of good faith and fair dealing stems from

4   Travelers' refusal to provide independent counsel due to a conflict of interest.  Because

5   the Court dismisses the breach of contract claim based on the Newlins and Quade's

6   inability to plausibly allege a breach of the contract, the claim for breach of the covenant

7   of good faith and fair dealing also fails.  *See Park Townsend LLC v. Clarendon America*

8   *Ins. Co.*, 916 F. Supp. 2d 1045, 1057 (N.D. Cal. 2013) (dismissing breach of the implied

9   covenant of good faith and fair dealing because the claim hinged on plaintiffs' asserted

10  right to independent counsel due to a conflict of interest which the complaint failed to set

11  forth).  Accordingly, the Court GRANTS Travelers' motion to dismiss the Newlins'

12  counterclaim for breach of the implied covenant of good faith and fair dealing.

13      **4.    Quade's Third Claim for Indemnity-Equitable Subrogation-Waiver-**

14  **Estoppel**

15       Travelers moves to dismiss the third cause of action in Quade's counterclaim

16  initially arguing that because it relies on the same facts as the breach of contract claim,

17  this claim also fails.  (Dkt. No. 33-1 at 20-22.)  Additionally, Travelers argues that the

18  third cause of action is a hodgepodge of ambiguous claims that fails to state a claim and

19  contends that Quade has failed to allege facts to support the elements of equitable

20  subrogation and equitable indemnity.  (*Id.*)  In response, Quade merely recites arguments

21  concerning the breach of contract claim without explaining whether the counterclaim

22  alleges claims for indemnity, equitable subrogation, waiver and estoppel.  (Dkt. No. 46 at

23  29-30.)

24       The Quade's counterclaim alleges a claim titled "Indemnity-Equitable

25  Subrogation-Waiver/Estoppel."  (Dkt. No. 17, Quade's counterclaim/TPC ¶¶ 77-81.)  The

26  facts supporting the cause of action is based on Travelers' refusal to appoint independent

27  counsel based on its reservation of rights and, as such, Travelers' inability to rely on the

28  rate cap in section 2860.  (*Id.*)  Therefore, Travelers' is obligated to pay Quade excess

fees in the amount of $1.7 million, plus interest based on the Newlins' assignment of their rights under the legal services agreement with Quade.  (*Id.*)

"In the insurance context, equitable subrogation and equitable contribution doctrines each pertain to the allocation of costs when there is more than one potentially responsible insurance company.  But, the two doctrines are 'entirely different' concepts." *Transcontinental Ins. Co. v. Ins. Co. of the State of Penn.*, 148 Cal. App. 4th 1296, 1303 (2007) (citation omitted).  "Equitable subrogation allows an insurer that paid coverage or defense costs to be placed in the insured's position to pursue a full recovery from another insurer who was primarily responsible for the loss.  *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1295 (1998). "Equitable contribution, on the other hand, applies to apportion costs among insurers that share the same level of liability on the same risk as to the same insured." *Id.*  "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *Id.* at 1305.  By their description, a claim for equitable subrogation and equitable contribution are brought by the insurers.  Here, Quade is not an insurer and has also not paid out any monies.  Therefore, the Court concludes that the third cause of action fails to state a claim.  Accordingly, the Court GRANTS Travelers' motion to dismiss Quade's third cause of action.

**C.    CCL's Motions to Dismiss Third Party Complaints filed by the Newlins, Quade, and AIG**

CCL moves to dismiss the third party complaints filed by the Newlins, Quade and AIG claiming that the complaints violate the rule against claim splitting because the same exact claim is pending in state court.  (Dkt. Nos. 50-52.)  AIG filed an opposition.  (Dkt. No. 58.)  Quade and the Newlins filed a joinder with AIG's opposition.   (Dkt. Nos. 61, 62.)  CCL filed a joint reply to the oppositions.  (Dkt. No. 70.)

The Newlins' third party complaint against CCL alleges one cause of action for breach of contract of the Santa Fe Irrigation District Contract and the Property Owners

Contract by refusing "to defend on terms that protected the NEWLINS' rights, and refusing to indemnify the NEWLINS." (Dkt. No. 16, Newlins' Counterclaim/TPC ¶ 58.) As an assignee to the Newlins' rights under the legal services agreement with Quade to recover unpaid excess fees from CCL, Quade's third party complaint against CCL alleges breach of contract. (Dkt. No. 17, Quade's Counterclaim/TPC ¶¶ 65-72.) Because AIG paid for the defense of the Newlins in the Hamadeh Litigation, AIG's third party complaint against CCL asserts equitable subrogation-express contractual indemnity; equitable subrogation-contractual promise to procure primary coverage; and equitable contribution-proportionate liability. (Dkt. No. 14, AIG's Counterclaim/TPC ¶¶ 56-64; 65-69; 79-81.)

In state court, the pending cross-complaint filed by the Newlins on December 7, 2017 against CCL alleges breach of contract and negligence. (Dkt. No. 51-2, CCL'S RJN[4], Ex. A, Newlins' State Court Cross-Complaint ¶¶ 58-76; 83-92). The breach of contract claim is also based on CCL's breach of the Santa Fe Irrigation District Contract and the Property Owners Contract by failing to timely accept the tender letter for defense and indemnity. (*Id.* ¶¶ 70-73.) The cross-complaint also seeks damages for express indemnity, equitable indemnity, total indemnity, comparative equitable indemnity, contribution, apportionment, and declaratory relief. (*Id.* ¶¶ 127-156.) No party disputes that the claims in the state and federal court cases are nearly identical.

CCL argues that the third party complaint filed by the Newlins should be dismissed under the doctrine of claim splitting because there is already a pending cross-complaint in state court with the same claim being alleged against CCL in this case. (Dkt. No. 50-1.) As to

---

[4] CCL filed three requests for judicial notice of the Newlins' cross complaint filed in state court. (Dkt. Nos. 50-2, 51-2; 52-2.) Under Federal Rule of Evidence 201, the Court may take judicial notice of filings in other courts. Accordingly, the Court GRANTS CCL's requests for judicial notice. *See Reyna Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

Quade and AIG, CCL argues that their third party complaints allege the same primary rights for recovery as the pending state court action based on the alleged breach of the same contracts related to the same property arising from the Hamadeh Litigation as the Newlins' third party complaint.  (Dkt. Nos. 51-1; 52-1.)  CCL contends that any judgment in this case would necessarily impair a judgment in the pending state court action as it would adjudicate the same rights and obligations under the same contracts.  (Dkt. No. 51-1 at 5; Dkt. No. 52-1 at 5.)  Moreover, because Quade, as the assignee, and AIG, as the subrogee, both stand in the shoes of the assignor and subrogor, they stand in privity with CCL.  (Dkt. No. 51-1 at 6-7; Dkt. No. 52-1 at 6-7.)  In response, the Newlins, Quade and AIG do not dispute that claim splitting bars the third party complaints as there is a pending state law cross-complaint with the same claim; instead they argue that the equities of the case require that the Court deny dismissal and "enter an order advising the parties that the Court will exercise supplemental jurisdiction over the Newlin parties' third party complaints against CCL Contracting in the event the Newlins dismiss their pending state cross-complaint against CCL Contracting without prejudice."  (Dkt. No. 58 at 16; *see also* Dkt. Nos. 61, 62.)

CCL moves to dismiss relying on the claim splitting analysis provided in *Adams v. California Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007) *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).  Under the doctrine, "Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."  *Id.* at 688 (quotation and citation omitted).  Borrowing from the test for claim prelusion, the court must assess "whether the second action is duplicative of the first, [and] examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same."  *Id.*  "After weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions."  *Id.*

However, *Adams* does not govern the Court's analysis here.  Claim splitting applies only to duplicative cases involving concurrent jurisdiction within federal court,[5] and does not apply in this case, involving concurrent jurisdiction between state and federal court.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . .' As between federal district courts, . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation.") (internal citations omitted); *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003) ("[O]verlapping or even identical federal and state court litigation may proceed simultaneously, limited only by doctrines of abstention and comity[.]"); *Chromologic LLC v. Yang*, Case No. SACV 13-01575 JVS(CWx), 2013 WL 12125537, at *3 (C.D. Cal. May 9, 2013) (claim-splitting did not apply to case involving similar claims in federal and state court as claim-splitting is aimed at duplicative litigation within federal courts).

In *Kanciper v. Suffolk County Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 92-93 (2d Cir 2013), the district court dismissed the complaint under claim splitting based on the fact that the plaintiff had a pending state court case involving the same facts.  *Id.* at 89.  The Second Circuit recognized that under the Ninth Circuit case of *Adams*, a plaintiff does not have a right to "maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant", *id.* at 92 (citation omitted); however, "as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (citing *Colorado River Water*, 424 U.S. at 817).  The court noted that the appropriate analysis to determine whether a stay or

---

[5] Interestingly, in CCL's reply, in disputing the oppositions' suggested solution, CCL challenges the cases cited by the opposition arguing that those cases all involved two federal cases, not a state and federal case.

dismissal was warranted on an allegedly duplicative federal claim with a state court parallel proceeding is under *Colorado River*. *Id.* at 93.

Similarly, in *Wyles v. Sussman*, 661 Fed. App'x 548, 552 (10th Cir. 2016), during the pendency of a state court complaint, the plaintiff filed a complaint in federal court asserting nearly identical claims. *Id.* at 549. The district court dismissed the complaint under the claim splitting doctrine. *Id.* The Tenth Circuit held that the district court erred in dismissing based on claim-splitting because it applies only when both complaints are in federal court. *Id.* at 552.

Therefore, because claim splitting under *Adams* does not apply to this case involving federal and state concurrent jurisdiction, the Court DENIES CCL's motions to dismiss the third party complaints filed by the Newlins, Quade and AIG as legally unsupported.

## D. Leave to Amend

In their opposition to Travelers' motion to dismiss the Newlins and Quade's counterclaims, in the even the Court grants dismissal on their claims, they seek leave to file an amended counterclaim. (Dkt. No. 46 at 13 n.2; 19 n.4; 31 n.5.) Because the Newlins and Quade may cure the deficiencies noted in the order, and an amendment would not be futile, the Court GRANTS the Newlins and Quade's request for leave to file an amended counterclaim. *See DeSoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## Conclusion

Based on the above the Court GRANTS Travelers' motions to dismiss the counterclaims filed by the Newlins and Quade. In addition, the Court DENIES CCL's motions to dismiss the third party complaints filed by the Newlins, Quade and AIG. The

/ / /

/ / /

/ / /

/ / /

/ / /

1  Newlins and Quade may file amended counterclaims on or before **November 20, 2020.**

2  The hearing set on November 6, 2020 shall be **vacated**.

3       IT IS SO ORDERED.

4  Dated:  November 2, 2020

Hon. Gonzalo P. Curiel
United States District Judge

20cv765-GPC(DEB)