1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANTHONY and BLYTHE NEWLIN, as individuals; QUADE & ASSOCIATES, PLC, a California professional liability company; AIG PROPERTY CASUALTY COMPANY, a Pennsylvania corporation, and DOES 1 through 10, inclusive,<br><br>                                    Defendants<br><br>and Related Counterclaims and Third-Party Complaints. | Case No.:  20cv765-GPC(DEB)<br><br>**ORDER GRANTING TRAVELERS' MOTION TO DISMISS THE AMENDED COUNTERCLAIM BY THE NEWLINS AND DENYING TRAVELERS' MOTION TO DISMISS THE AMENDED COUNTERCLAIM BY QUADE**<br><br>**[Dkt. Nos. 85, 86.]** |

Before the Court are Plaintiff and Counterdefendant Travelers Indemnity Company of Connecticut's ("Travelers") motions to dismiss the amended counterclaims filed by Anthony and Blythe Newlin (the "Newlins"), and Quade & Associates, PLC ("Quade") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Dkt. Nos. 85, 86.)  The Newlins and Quade jointly filed an opposition.  (Dkt. No. 90.)  Travelers filed a reply to the joint opposition.  (Dkt. No. 94.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the

1

reasoning below, the Court GRANTS Travelers' motion to dismiss the Newlins' amended counterclaim without leave to amend and DENIES Travelers' motion to dismiss Quade's amended counterclaim.

### Procedural Background

On April 22, 2020, Plaintiff Travelers filed a complaint alleging counts for declaratory relief against Defendants the Newlins, Quade and AIG Property Casual Company, ("AIG"), as well as a breach of contract claim against the Newlins seeking to clarify its defense and indemnity obligations to the Newlins, Quade and AIG arising from an underlying state court complaint in San Diego County Superior Court, Case No. 37-2017-00006963-CU-OR-NC entitled *Hamadeh et al. v. Newlins, et al.,* ("Hamadeh Litigation"). (Dkt. No. 1, Compl.) A first amended complaint ("FAC") was filed on May 1, 2020 alleging the same claims. (Dkt. No. 5, FAC.) On June 11, 2020, the Newlins and Quade filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6), (Dkt. No. 15), and AIG filed a motion to dismiss pursuant to Rule 12(b)(1). (Dkt. No. 13.) After full briefing on the motions, on September 14, 2020, the Court granted the Newlins' motion to dismiss the breach of contract claims under Rule 12(b)(6) and granted all Defendants' motions to dismiss pursuant to Rule 12(b)(1) with leave to amend. (Dkt. No. 55.) On September 24, 2020, Travelers filed a second amended complaint ("SAC"). (Dkt. No. 56.) On October 13, 2020, the Newlins, Quade and AIG filed motions to dismiss. (Dkt. Nos. 66, 67.) On January 13, 2021, after full briefing by the parties, the Court granted the Newlins, Quade and AIG's motions to dismiss the second amended complaint pursuant to Rule 12(b)(1). (Dkt. No. 93.)

On June 11, 2020, the Newlins, AIG and Quade each separately filed a counterclaim against Travelers and each separately filed a third-party complaint against CCL Contracting, Inc. ("CCL"), (collectively "counterclaim/TPC"). (Dkt. Nos. 14, 16, 17.) While Travelers filed an answer to AIG's counterclaim, (Dkt. No. 31), it filed motions to dismiss the Newlins and Quade's counterclaims which the Court granted on November 2, 2020 with leave to amend. (Dkt. Nos. 32, 33, 46, 49, 73.) In that order, the

Court also denied CCL's motions to dismiss the third-party complaints filed by the Newlins, AIG and Quade.  (Dkt. Nos. 50, 51, 52, 58, 59, 60, 70, 73.)

The Newlins and Quade filed their first amended counterclaims against Travelers on November 20, 2020.  (Dkt. No. 81, 82.)  The Newlins' amended counterclaim allege two causes of action against Travelers for breach of contract and breach of the implied covenant of good faith and fair dealing.  (Dkt. No. 81, Newlins' Am. Counterclaim/TPC.)  Quade's amended counterclaim assert two causes of action for breach of contract and indemnity, equitable subrogation, waiver/estoppel against Travelers.  (Dkt. No. 81, Quade's Am. Counterclaim/TPC.)

Travelers filed the instant motions to dismiss all claims in the Newlins and Quade's amended counterclaims pursuant to Rule 12(b)(6) which is fully briefed.  (Dkt. Nos. 85, 86, 90, 94.)

## Factual Background

According to the Newlins' amended counterclaim, the Newlins were the owners of real property located at 16350 Via Del Alba, Rancho Santa Fe, California 92067 ("Property") from late 2012 until February 2015.  (Dkt. No. 81, Newlins' Am. Counterclaim/TPC ¶¶ 1, 8.)  During that time, the Newlins remodeled, repaired and/or modified two residences on the property as well as made repairs and improvements to the landscape, hardscape and irrigation system.  (*Id*. ¶ 8.)  In addition, CCL was contracted by the Santa Fe Irrigation District to perform certain work on the water infrastructure on the property and to move/install a new fire hydrant and to perform certain related site work.  (*Id.*)

Around October 18, 2013, CCL submitted a bid to the Santa Fe Irrigation District for the "Group 2 Pipelines Project (J-1202)" which included work to be performed on the Property while the Newlins were the owners.  (*Id*. ¶¶ 16-18.)  CCL was awarded the contract and on December 2, 2013, CCL signed the Santa Fe Irrigation District Contract.  (*Id*. ¶ 18.)  The Santa Fe Irrigation District Contract required CCL to procure certain insurance.  (*Id*. ¶¶ 19-21.)  As such, CCL purchased Commercial General Liability

policies of insurance from Travelers for dates of coverage from April 1, 2014 – April 1, 2018 ("CCL Policies").  (*Id.* ¶ 29.)  Per the Santa Fe Irrigation District Contract, CCL named the Newlins as additional insureds on the CCL Policies.  (*Id.* ¶¶ 21, 31.)  The Contract required CCL to "defend . . . indemnify and hold District, its officials, officers, agents, employees, owners of property upon which Contractor will perform Work . . . free and harmless from any claims . . . arising out of or incident to any acts, omissions or willful misconduct of Contractor . . ."  (*Id.* ¶ 22.)  Per the Santa Fe Irrigation District project, the Newlins entered into an "Agreement Regarding Modifications to Property Owner's Water Facilities" ("Property Owner Contract") with the Santa Fe Irrigation District around October 8, 2013 concerning certain work on the water infrastructure systems that was located on the property.  (*Id.* ¶ 24.)  The Property Owner Contract also stated that CCL was to defend and hold harmless any claims arising out of the acts, omission or willful misconduct of the contractor.  (*Id.* ¶ 26.)  Around April 2014, CCL submitted a change order, approved by the Santa Fe Irrigation District, to relocate the fire hydrant to the end of the cul-de-sac on Via Del Alba.  (*Id.* ¶ 28.)

Around January 15, 2015, the Newlins entered into escrow with Bassim Hamadeh, Seidy Hamadeh and the Ravello Trust (collectively "Hamadeh plaintiffs") for the sale of the Property.  (*Id.* ¶ 9.)  On February 24, 2017, the Hamadeh plaintiffs filed a complaint in San Diego Superior Court against the Newlins and others for negligent misrepresentation, negligence and breach of contract.  (*Id.* ¶ 10.)  On October 12, 2017, the Hamadeh plaintiffs filed a first amended complaint adding claims for fraud by concealment, intentional misrepresentation, negligence per se under California Business & Professions Code section 7028 *et seq.,* fraudulent inducement and negligence per se under California Civil Code section 1102 *et seq.*  (*Id.*)  The Hamadeh Litigation arose from the Newlins' alleged intentional/negligent misrepresentation and/or concealment relied upon by the Hamadeh plaintiffs when they purchased the property concerning alleged defects with the modification and remodel work performed by the Newlins and/or on behalf of the Newlins.  (*Id.*)

AIG issued a homeowner policy to the Newlins for the policy period, November 29, 2014 to November 29, 2015, which provided liability coverage, including defense, for qualifying damages for property damage caused by an occurrence and subject to limitations and exclusions.   (*Id.* ¶ 7.)  The Newlins tendered their defense in the Hamadeh Litigation to AIG, its insurer, and it agreed to defend the Newlins under a reservation of rights.  (*Id.* ¶ 11.)  After the tender, AIG assigned panel counsel, Patrick J. Mendez,[1] Esq. of Tyson & Mendes, LLP to defend the Newlins.  (*Id.* ¶ 12.)  In addition, AIG also agreed to fund the Newlins' retention of Michael W. Quade, Esq. as independent counsel under California Civil Code section 2860 "because the outcome of certain coverage issues on which AIG reserved rights could be controlled by the manner in which counsel conducted the defend (sic)."  (*Id.*)

Around May 23, 2017, Quade submitted a Notice of Tender of Defense and Demand for Indemnification and Notice of Claim to CCL demanding that it defend and indemnify the Newlins for claims made by the Hamadeh plaintiffs related to CCL's scope of work and requested that CCL place its insurance carriers on notice.  (*Id.* ¶ 39.)  CCL's counsel began communicating with Quade.  (*Id.*)  On June 14, 2017, Quade received an email from "Ms. Barnes" of Travelers acknowledging receipt of the tender to CCL and that she had been assigned to the claim.  (*Id.* ¶ 40.)  On June 15, 2017, Quade sent Ms. Barnes, at her request, a copy of the Hamadeh complaint and the two cost of repair estimates from experts retained by the Hamadeh plaintiffs.  (*Id.* ¶ 41.)  Quade asked for copies of the permits obtained by CCL for the work it performed and directed Ms. Barnes to section 1.6. which provided the costs associated with repairs which Hamadeh plaintiffs alleged were necessitated by the work performed by CCL.  (*Id.*)  On June 20, 2017, Quade emailed a follow up on the status of the tender to Ms. Barnes.  (*Id.* ¶ 42.)  Ms. Barnes responded the next day, on June 21, 2017, stating there was no permit.  (*Id.*)

---

[1] It appears that Tyson Mendes name is incorrectly spelled as Tyson Mendez in the Newlins' amended counterclaim.

1  Then, on June 30, 2017, Ms. Barnes provided copies of certain permits associated with
2  CCL's work, but took the position that Via Del Alba was not part of the permit because
3  the work was performed on a private drive that is not maintained by the County.  (*Id.*)
4  She also attached documents and took the position that all work was done at the direction
5  of the Santa Fe Irrigation District.  (*Id.*)  Ms. Barnes, on behalf of Travelers and CCL,
6  further asked the Newlins to withdraw their tender.  (*Id.*)  On July 5, 2017, Quade
7  responded stating the Newlins would not withdraw their tender because the Hamadeh
8  plaintiffs were seeking damages from them based on the work performed by CCL and
9  informed Ms. Barnes that a site inspection would take place on July 20, 2017.  (*Id.* ¶ 43.)

10     On July 14, 2017, Ms. Donna Moore ("Ms. Moore") of the firm of Diederich &
11  Associates sent an email to Quade indicating she had been retained by Travelers to
12  represent CCL.  (*Id.* ¶ 44.)  Later that day, Quade responded to Ms. Moore answering all
13  of her questions.  (*Id.*)  Ms. Moore confirmed that Travelers would be attending the site
14  inspection.  (*Id.*)

15     On August 3, 2017, Quade tendered the Newlins' defense directly to Travelers
16  based on Newlins' status as additional insureds under the CCL policies.  (*Id.* ¶ 45.)  On
17  August 11, 2017, Ms. Moore sent correspondence to Quade asking for a copy of the
18  cross-complaint naming CCL, along with proof of service on her client.  (*Id.* ¶ 46.)  On
19  the same day, Quade responded indicating that the Newlins were still evaluating whether
20  to file a cross-complaint against CCL and reminded her of Travelers' outstanding
21  contractual obligation to defend and indemnify the Newlins.  (*Id.*)  Later that day, Quade
22  separately emailed Ms. Diederich asking for a response on the tender as one had not yet
23  been provided.  (*Id.*)  On September 20, 2017, Quade sent another re-tender on behalf of
24  the Newlins to Ms. Barnes and Ms. Moore again demanding CCL and Travelers defend
25  and indemnify the Newlins.  (*Id.* ¶ 47.)

26     On October 6, 2017, Travelers sent a letter to Quade representing that Travelers
27  would defend the Newlins in the Hamadeh Litigation under a full reservation of rights
28  and defenses under the CCL policies.  (*Id.* ¶ 48.)  The rights reserved included the issue

of "(1) whether the damages resulted from an 'occurrence,' a term defined in the CCL policies to mean, in pertinent part, 'an accident', and (2) the extent to which coverage is afforded under the Blanket Additional Insured Endorsements in the CCL policies which limit coverage to 'injury or damage . . . caused by acts or omissions' of CCL."  (*Id.*)  Further, the October 6, 2017 letter represented that coverage under the CCL policies to the Newlins as additional insureds was "excess."  (*Id.* ¶ 49.)

By taking the coverage positions stated in the reservation of rights letter to Quade and the Newlins, the amended counterclaim alleges that Travelers had a duty to provide independent counsel due to a conflict of interest as required under Civil Code section 2860(a).  (*Id.* ¶ 50.)  First, by expressly raising the CCL policy's "occurrence" requirement as a limitation on coverage, Travelers put itself in a position where it could "potentially deny indemnity" to the Newlins based on a determination as to the character of the Newlins' conduct which was at issue in the underlying Hamadeh Litigation.  (*Id.*)  In other words, "the NEWLINS' interests would be for their liability-producing conduct at trial to be solely derivative of the acts and omissions of CCL thereby affording the NEWLINS with coverage under the CCL policies, while TRAVELERS' opposing interest would be for the Newlins' liability-producing conduct to be based in whole or in part on the NEWLINS' 'independent acts or omissions,' thereby allowing TRAVELERS to avoid providing the NEWLINS with indemnity coverage under the CCL policies."  (*Id.*)  According to the amended counterclaim, this created an actual, non-theoretical conflict of interest for any defense counsel within a "tripartite" relationship between the Newlins and Travelers.  (*Id.*)  Second, by raising the coverage limitations in the Blanket Additional Insured Endorsements and stating that the Newlins would only be afforded coverage "[i]f, and only to the extent that, the injury or damage is caused by acts" of CCL and its subcontractors and would not provide any coverage "with respect to the independent acts or omissions" of the Newlins, Travelers put itself in a position where it could "potentially deny indemnity" to the Newlins based on a determination that the Newlins' liability producing conduct involved "the independent acts or omissions" of the

Newlins and/or work by CCL outside the scope of its contractual obligations to the Newlins.  (*Id.*)  Again, the "NEWLINS' interests would be for their liability-producing conduct at trial to be solely derivative of the acts and omissions of CCL thereby bringing their alleged liability within the coverage of the CCL policies, while TRAVELERS' opposing interest would be for the NEWLINS' liability-producing conduct to be based in whole or in part on the NEWLINS' 'independent acts or omissions,' thereby allowing TRAVELERS to avoid providing the NEWLINS with indemnity coverage under the CCL policies."  (*Id.*)

In addition, these actual conflicts of interest created by Travelers' express reservation of its rights to disclaim indemnity coverage for the Newlins if the CCL policy's "occurrence" requirements were not satisfied and/or insofar as the Newlins' liability producing conduct involved their "independent acts or omissions", would require Travelers' appointed defense counsel for the Newlins, to "be in a position to control or otherwise influence the outcome of these issues through the course of discovery and the presentation of evidence at trial of the Hamadeh Litigation." (*Id.* ¶ 51.)  The conflict of interest would be further exacerbated because defense counsel's access to information bearing directly on the outcome of these coverage issues would impermissibly put defense counsel in a situation where it was bound to disclose such information to Travelers to further Travelers' interests, while simultaneously also being bound to withhold that same information from Travelers in order to protect the interests of the Newlins.  (*Id.*)

Travelers identified Bohm Wildish LLP ("Bohm Wildish") as its chosen defense counsel and indicated that "if the Newlins wish to continue to retain Quade & Associates' services, they may do so, but at their own expense.  From today's date forward, Travelers will only pay for the defense fees and costs incurred by Mr. Bohm.  Mr. Bohm will be contacting you shortly to discuss the handling of this matter."  (*Id.* ¶ 53.)

On October 19, 2017, Annie Won ("Ms. Won") of Bohm Wildish sent Quade the first of three Notice of Association of Counsel forms, each of which contained incorrect

information.  (*Id.* ¶ 54.)  On November 1, 2017, Ms. Won wrote that this was her third attempt to associate into the matter and Quade had not responded to her numerous emails and calls and asked that she be contacted as soon as possible to discuss the matter.  (*Id.*)  Newlins' then-coverage counsel, Mr. Hilding, responded advising that having a third firm involved in the defense "would create a number of serious issues" including coordination amongst all three firms, giving the wrong impression to the jury, and based on her firm's errors in the association of counsel forms sent, "quality control" issues.  (*Id.* ¶ 55.)  Counsel further advised that AIG would be providing the defense through panel counsel and independent counsel and asked Ms. Won to inquire with Travelers about sharing in the cost of the defense.  (*Id.*)  On November 29, 2017, Ms. Won responded that she had not received an update from Travelers about her assignment to the case and reasserted that her office remains assigned counsel for the Newlins and requested that the files be sent to her so that she could associate into the case.  (*Id.* ¶ 56.)  The next day, Mr. Hilding emailed Ms. Won expressing his concern that Travelers had not yet responded to counsel it selected.  (*Id.* ¶ 57.)  In response, Ms. Won referred Mr. Hilding to Sandy Ngo of Travelers and Mr. Hilding contacted her on November 3, 2017 by email and voicemail but Ms. Ngo never responded.  (*Id.* ¶ 58.)

On December 7, 2017, the Newlins filed a cross-complaint against CCL and others in the Hamadeh action and Ms. Moore represented CCL.  (*Id.* ¶ 59.)  Once the cross-complaint was filed, another actual conflict of interest arose requiring Travelers to appoint independent counsel.  (*Id.*)  At the time of the filing of the cross-complaint against CCL, Travelers was defending CCL against all allegations and claims raised against it in the Hamadeh Litigation and now it included the Newlins' claims against CCL in the cross-complaint. Additionally, panel appointed defense counsel for CCL was now in a "tripartite" relationship with both CCL and Travelers and was duty bound to advance both of their interests in the Hamadeh Litigation by reducing or eliminating CCL's exposure to all claims against it in that litigation, which now included the claims by the Newlins.  (*Id.*)  Further there was an active conflict of interest since, where in

order to defeat the Newlins' claims against CCL, Travelers could both minimize its responsibility to indemnify CCL under the CCL policies and avoid its insuring obligations to the Newlins by contending that the Newlins' liability was premised on conduct outside the scope of additional insured coverage provided by the Blanket Additional Insured Endorsements.  (*Id.*)  Despite the existence of an actual conflict of interest, Travelers failed to provide the Newlins with independent counsel and instead, it continued to attempt to impermissibly insert itself into both sides of the dispute between the Newlins and CCL by continuing to attempt to appoint panel defense counsel.  (*Id.*)  On July 27, 2018, Quade sent another demand letter to CCL in care of Ms. Moore, demanding CCL defend and indemnify the Newlins.  (*Id.* ¶ 60.)

On August 14, 2018, Ms. Won wrote to Quade and sent a third Association of Counsel form which still contained incorrect information.  (*Id.* ¶ 61.)  On August 21, 2018, in response to Mr. Hilding's claim that an actual conflict of interest existed, Ms. Won denied there was a conflict of interest based on the Newlins' cross-complaint.  (*Id.* ¶¶ 61, 62.)  According to the Newlins, Ms. Won's failure to recognize well-established California law regarding "tripartite relationships" created by her appointment, her failure to analyze her conflicting ethical obligations to the Newlins and Travelers caused by Travelers' coverage position letter to the Newlins as well as the filing of the Newlins' cross-complaint against CCL and to advise the Newlins accordingly, Ms. Won was unable to provide effective representation of the Newlins' interest in the Hamadeah litigation; thus creating another active conflict of interest.  (*Id.* ¶ 64.)

On January 17, 2019, Quade sent a letter to Ms. Ngo informing her of the January 24, 2019 mediation in the Hamadeh Litigation but no representatives of Travelers attended the mediation.  (*Id.* ¶ 67.)  CCL was represented by Ms. Moore at the mediation.  (*Id.*)  AIG funded a $900,000 settlement between the Newlins, the Hamadeh plaintiffs and all the Hamadeh cross-defendants except CCL.  (*Id.*)  During the Hamadeh Litigation, AIG paid over $1.5 million in attorney fees on behalf of the Newlins to Tyson Mendes and Quade.  (*Id.* ¶ 14.)  CCL and Travelers did not contribute to the defense or

indemnification of the Newlins in the Hamadeh action.  (*Id*. ¶ 70.)  On January 24, 2019, after the settlement, Senior Counsel for Travelers finally emailed Quade asking for an update on the Notice of Association of Counsel and stating that it did not believe that there was a conflict of interest.  (*Id.* ¶ 68.)

The Newlins' amended counterclaim alleges breach of contract for failing to provide a defense and indemnity in the Hamadeh action and breach of the implied covenant of good faith and fair dealing.  (*Id.* ¶¶ 79-91.)  The Quade's amended counterclaim against Travelers assert almost identical facts as the Newlins amended counterclaim.  (Dkt. No. 82, Quade's Am. Counterclaim/TPC.)  Quade additionally alleges that while AIG agreed to fund the Newlins' retention of Quade as independent counsel, California Civil Code section 2860 limits the rate of attorneys fees to $250/hour and the rate of paralegals to $125/hour.  (*Id.* ¶ 15.)  Therefore, according to the legal services agreement between Quade and the Newlins, the Newlins are legally obligated to pay Quade the difference of its regular rates of $695/hour for partners, $450/hour for associates and $190/hour for paralegals.  (*Id.*)  On June 10, 2020, the Newlins assigned all their rights under the legal services agreement with Quade to recover unpaid excess fees from CCL and/or Travelers while still retaining their own personal rights to pursue claims for emotional distress, punitive damages and attorney's fees incurred in recovering contractual benefits unreasonably withheld by Travelers.  (Id. ¶ 17.)  Quade alleges that CCL and Travelers are obligated to pay it the excess fees of about $1.7 million, plus interest.  (*Id.* ¶ 18.)  Quade asserts breach of contract against Travelers for failing to pay for independent counsel, (*id.* ¶¶ 90-93), and indemnity, equitable subrogation, waiver/estoppel against Travelers, (*id.* ¶¶ 94-98).

## Discussion

### A.   Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or

sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto*, 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B.    Travelers' Motions to Dismiss the Newlins' and Quade's Amended Counterclaims**

### 1.   Newlins and Quade's Claims for Breach of Contract

Travelers moves to dismiss the Newlins and Quade's breach of contract claim because they have failed to allege a breach and additionally as to the Newlins, they have failed to allege damages resulting from the breach.  (Dkt. No. 85-1 at 13-25[2]; Dkt. No. 86-1 at 11-21.)  The Newlins and Quade filed a joint response arguing that they have sufficiently alleged breach of contract for failing to defend and indemnify the Newlins by appointing independent counsel and as a result, the Newlins suffered damages.  (Dkt. No. 90 at 8-28.)

Under California law, the elements required for a cause of action for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Here, the parties do not dispute that Travelers acknowledged its duty to defend the Newlins as an additional insured under the CCL policies.  However, the parties disagree on whether there was a breach of the CCL policies when Travelers failed to appoint independent *Cumis* counsel due to a conflict of interest.

An insurer "must defend a suit which potentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966) (emphasis omitted).  "At the time an insurer accepts an insured's tender of defense, the insurer has an incentive to reserve a broad spectrum of coverage defenses in order to preserve its right to limit its obligation to indemnify to covered claims.  By giving notice to its insured, an insurer may agree to defend a suit subject to a reservation of rights.  In this manner, an insurer meets its obligation to furnish a defense without waiving its right to assert coverage defenses against the insured at a later time." *Swanson v. State Farm Gen. Ins. Co.*, 219 Cal. App. 4th 1153, 1162 (2013) (internal citations and quotations omitted).

---

[2] Page numbers are based on the CM/ECF pagination.

"An insurer that owes a duty to defend an insured, arising because there exists a potential for liability under the policy, has the right to control defense and settlement of the third party action against its insured, and is . . . a direct participant in the litigation." *Id.* (citation and internal quotations omitted).

However, if an actual, significant conflict of interest exists or arises between the insurer and the insured, the insured is entitled to independent counsel. *See Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1007 (1998); Cal. Civ. Code § 2860. California Civil Code section 2860 ("section 2860") codified the opinion in *San Diego Federal Credit Union v. Cumis Ins. Society, Inc*., 162 Cal. App. 3d 358, 364 (1985) which held that "if a conflict of interest exists between an insurer and its insured, based on possible noncoverage under the insurance policy, the insured is entitled to retain its own independent counsel at the insurer's expense." *Fed. Ins. Co. v. MBL, Inc*., 219 Cal. App. 4th 29, 41 (2013) (citing *Cumis Ins. Society, Inc*., 162 Cal. App. 3d at 364). Section 2860 "'clarifies and limits' the rights and responsibilities of insurer and insured as set forth in *Cumis*." *James 3 Corp. v. Truck Ins. Exch.,* 91 Cal. App. 4th 1093, 1100 (2001). Section 2860 provides that,

> [i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured.

Cal. Civ. Code § 2860(a). In addition,

> a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits.

Cal. Civ. Code § 2860(b).  The right to independent counsel at the insurer's expense does not exist in every case involving a conflict of interest nor does every reservation of rights entitle an insured to *Cumis* counsel.  *James 3 Corp*., 91 Cal. App. 4th at 1101.

The duty to provide *Cumis* counsel arises out of the attorney's close ties with the insurance company.

> The attorney, who typically has a long-standing relationship with the insurer and none with the insured (including little prospect of future work), may be forced to make numerous and varied decisions that could help one of his clients concerning insurance coverage and harm the other. [T]here has been recognition that, in reality, the insurer's attorneys may have closer ties with the insurer and a more compelling interest in protecting the insurer's position, whether or not it coincides with what is best for the insured. Consequently, in order to eliminate the ethical dilemmas and temptations that arise along with conflict in joint representations, the insurer is required to provide its insured with independent counsel of the insured's choosing[.]

*Long v. Century Indem. Co*., 163 Cal. App. 4th 1460, 1469-70 (2008) (citations and quotations omitted).

An insured's right to independent counsel "depends upon the nature of the coverage issue, as it relates to the issues in the underlying case."  *Fed. Ins. Co*., 219 Cal. App. 4th at 42 (quoting *Blanchard v. State Farm Fire & Casualty Co.,* 2 Cal. App. 4th 345, 350 (1991)).  "[W]here the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel."  *Id.* (quoting *Foremost Ins. Co. v. Wilks*, 206 Cal. App. 3d 251, 261 (1988).  "There is no such entitlement, for example, where the coverage issue is independent of, or extrinsic to, the issues in the underlying action [citation] or where the damages are only partially covered by the policy."  *Id.* (quoting *Dynamic Concepts, Inc.*, 61 Cal. App. 4th at 1006); *Gafcon, Inc. v. Ponsor & Assocs*., 98 Cal. App. 4th 1388, 1421-22 (2002) ("It is only when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case that a

conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise.").

It is established that a conflict does not arise when an insurer provides a general reservation of rights. *Gafcon, Inc*., 98 Cal. App. 4th at 1422; *Fed. Ins. Co.*, 219 Cal. App. 4th 29 at 47 (a general reservation of rights-where the insurer does not reserve its right to deny coverage under a particular policy exclusion-does not give rise to a conflict of interest). Some examples of a conflict of interest requiring the insurer to provide independent counsel include: (1) "where the insurer reserves its rights on a given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel;" (2) "where the insurer insures both the plaintiff and the defendant;" (3) "where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend;" (4) "where the insurer pursues settlement in excess of policy limits without the insured's consent and leav[es] the insured exposed to claims by third parties;" and (5) "any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her representation of the one is rendered less effective by reason of his [or her] representation of the other." *James 3 Corp,* 91 Cal. App. 4th at 1101 (emphasis in original) (internal quotation marks and citations omitted). The conflict of interest must be "significant, not merely theoretical, actual, not merely potential." *Dynamic Concepts, Inc.*, 61 Cal. App. 4th at 1007.

On the five types of conflicts of interest listed above, the Newlins and Quade allege the first, second and fifth ones give rise to a conflict of interest requiring *Cumis* counsel. Because the Court concludes that the SAC alleges a conflict of interest as to the first one, it will not address the second and fifth type of conflict of interest.[3]

---

[3] Both parties also raise arguments whether intentional conduct creates a conflict of interest requiring independent counsel but such a conflict arises if the reservation of rights concerns fraud or intentional conduct. *See Long*, 163 Cal. App. 4th at 1471 ("Perhaps the most common situation in which a conflict of interest exists and independent or *Cumis* counsel is required occurs when the insured's allegedly wrongful conduct could be found to be intentional, with coverage thus depending on the ultimate characterization of the insured's actions. Both the insured and the insurer, of course, share a common

16

a.    **"Where the Insurer Reserves Its Rights On a Given Issue and the Outcome of That Coverage Issue Can Be Controlled by the Insurer's Retained Counsel"**

Travelers asserts that the Newlins and Quade only present legalese and a potential for conflict and fails to assert facts demonstrating how the outcome of any coverage issue could be controlled by its appointed counsel or that any coverage issues were related to the Hamadeh Litigation as provided in Travelers' reservation of rights letter.  (Dkt. No. 85-1 at 18-20; Dkt. No. 86-1 at 15-17.)  Specifically, Travelers argues that the issues raised by the reservation of rights, "whether damages resulted from an occurrence [or] accident, the extent to which the additional insured endorsement applied, or whether Travelers' coverage was excess" are not issues that would be determined in the Hamadeh Litigation; therefore, Travelers' appointed defense counsel could not control these coverage issues.  (Dkt. No. 85-1 at 18; Dkt. No. 86-1 at 16.)

In opposition, the Newlins and Quade contend that for purposes of a motion to dismiss, they have sufficiently alleged that the two coverage issues raised in the reservation of rights regarding whether the damages was due to an "occurrence" and whether the Blanket Additional Insured Endorsements applied were at issue in the underlying Hamadeh Litigation and created an "actual, non-theoretical" conflict of interest.  (Dkt. No. 90 at 8.)  Further they argue Travelers' retained counsel would be in a position to control or otherwise influence the outcome of the Hamadeh Litigation through discovery and presentation of evidence at trial to the detriment of the Newlins.  (*Id.* at 8-9.)

---

interest in defeating the claims. But if liability is found, their interests diverge in establishing the basis for that liability."); *Hollyway Cleaner & Laundry Co., Inc. v. Central Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1006 (C.D. Cal. 2016) (no *Cumis*-level conflict of interest where insurer did not expressly reserve its rights on fraud or collusion).  Because the reservation of rights alleged in the amended counterclaims did not concern intentional conduct or fraud, the parties' argument regarding intentional conduct is not relevant.

20cv765-GPC(DEB)

A conflict of interest requiring independent counsel exists "where the insurer reserves its rights on a given issue *and* the outcome of that coverage issue can be controlled by the insurer's retained counsel." *James 4 Corp.,* 91 Cal. App. 4th at 1101. Here, the Newlins and Quade allege that Travelers' reservation of rights included certain coverage issues and is not disputed by Travelers.  (*See* Dkt. No. 81, Newlins' Am. Counterclaim/TPC ¶ 48; Dkt. No. 82, Quade's Am. Counterclaim/TPC ¶ 51.)

The disputed question is whether "the outcome of that coverage issue can be controlled by the insurer's retained counsel", *James 3 Corp,* 91 Cal. App. 4th at 1101, or the reservation of rights are related to the issues in the underlying case, *Fed. Ins. Co.*, 219 Cal. App. 4th at 42.  This requires a "careful analysis of the parties' respective interests to determine whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured." *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 19 Cal. App. 5th 789, 798 (2018).

In the underlying case and relevant to the issue in this case, the Hamadeh plaintiffs claim the Newlins were negligent in their remodeling of the Property as well as fraudulently concealed their knowledge of the faulty renovation work.  (Dkt. No. 86-5, Travelers' RJN, Ex. B, Hamadeh FAC.)  The FAC alleged that when the Newlins owned the Property, they remodeled a significant portion of the main home and secondary dwelling unit and significantly altered the grading and site improvements on the Property. (*Id.* ¶ 14.)  Specifically, they alleged that the Newlins failed to disclose a "past history of multiple poria incassata fungal infestation, mold infestations, recurrent flooding of below grade areas of the home, a failed septic system, cracked and failed interior slabs, failed and defective hardscape, inadequate site drainage, numerous unpermitted and non-code compliant additions and improvements, and numerous other defective conditions."  (*Id.* ¶ 27.)  Further, after the close of escrow, the Hamadehs became aware of defects in the "plumbing, septic and drainage systems."  (*Id.* ¶ 31.)  The Hamadeh FAC claims that the Newlins and/or contractors negligently and carelessly performed work that fell below the

standard of care required for such work on the Property.   (*Id.* ¶ 17.)  "The Newlins failed to exercise reasonable care in remodeling the Property, making repairs to the Property, or otherwise performing or supervising construction or upgrades to the Property and failed to obtain proper permits or other agency approval and ensure that licensed contractors performed such work within the applicable standards of care."  (*Id.* ¶ 51.)

The Newlins' cross-complaint[4] against CCL, in the underlying litigation, alleges breach of contract for failing to obtain and pay for all permits and licenses for the work CCL performed on the Property.  (Dkt. No. 50-2, CCL's RJN, Ex. A, Newlins' Cross-Complaint ¶¶ 59-69), and failing to timely accept their demand for defense and indemnity.  (*Id.* ¶¶ 70-75.)  The Newlins also alleged negligence against CCL for failing to exercise reasonable skill and care while performing work on the water infrastructure and installation of a new fire hydrant and related work on the property.  (*Id.* ¶¶ 84-87.) The Newlins seek express indemnity, equitable indemnity, total indemnity, comparative equitable indemnity, contribution, apportionment and declaratory relief.  (*Id.* ¶¶ 128-155.)

The two coverage issues reserved by Travelers raised by the Newlins and Quade as raising a conflict of interest requiring independent counsel is 1) whether the damages were due to an occurrence or accident, and 2) whether coverage is provided for under the Blanket Additional Insured Endorsement in the CCL policies which covers "injury or damage . . . caused by acts or omissions" of CCL but does not cover "independent acts or omissions of" the additional insured, the Newlins.  (Dkt. No. 81, Newlins' Am. Counterclaim/TPC ¶¶ 35, 48.)

The amended counterclaims have sufficiently alleged a conflict of interest that Travelers "could potentially deny indemnity to the Newlins" if a jury determines that the Newlins' liability producing conduct involved the "independent act or omission" of the Newlins and/or the work by CCL was outside the scope of its contractual obligation to

---

[4] The Newlins also named the prior owner of the Property and other contractors as defendants for work performed on the Property.  (Dkt. No. 50-2, CCL's RJN, Ex. A, Newlins' Cross-Complaint.)

20cv765-GPC(DEB)

the Newlins and that Travelers' appointed counsel would be in a position to control or otherwise influence the outcome of these issues through discovery or trial presentation. (Dkt. No. 81, Newlins' Am. Counterclaim/TPC ¶¶ 50, 51; Dkt. No. 82, Quade's Am Counterclaim/TPC ¶¶ 53, 54.)

The Hamadeh FAC asserted that the Newlins negligently had remodel work performed on the main home, secondary dwelling unit as well as grading and site improvements.  (Dkt. No. 86-5, Travelers' RJN, Ex. B, Hamadeh FAC ¶ 14.)  In the amended counterclaim, Newlins claim that they made repairs and improvements on the landscape, hardscape and the irrigation system.  (Dkt. No. 81, Newlins' Am. Counterclaim/TPC ¶ 8.)  After they purchased the Property, the Hamadeh plaintiffs became aware of issues in the plumbing, septic and drainage systems on the Property, (Dkt. No. 86-5, Travelers' RJN, Ex. B, Hamadeh FAC ¶ 31), which may or may not overlap with CCL's work on the Property involving the water infrastructure, installation of a new fire hydrant and related work.  (Dkt No. 81, Newlins' Am. Counterclaim/TPC ¶ 8.)

Therefore, the Newlins and Quade have plausibly alleged a conflict of interest existed as Travelers would have an interest in denying indemnity to the Newlins based on the Newlins' separate liability due to their alleged negligent remodel work done on the Property.  Due to the alleged conflict of interest, the Newlins and Quade have also claimed that Travelers' retained counsel could control the outcome of the coverage issue in the underlying Hamadeh Litigation.  A ruling or verdict on whether the Newlins were responsible for the water related issues on the Property could result in relieving CCL of liability.  Therefore, according to the amended counterclaims, Travelers' retained counsel could make tactical maneuvers in the underlying Hamadeh Litigation to the detriment of the Newlins' coverage issues.

Accordingly, the Court concludes the Newlins and Quade allege facts to support a conflict of interest requiring independent counsel on whether the coverage issue raised by

the reservation of rights can be controlled by the insurer's retained counsel in the underlying litigation, and as such, they have alleged a breach of the CCL policies.

### 2.    Newlins' Damages

Travelers also argues that the Newlins have not alleged they have been emotionally damaged by Travelers' alleged breach.  (Dkt. No. 85-1 at 10-13.)  The Newlins respond that it disagrees with the Court' conclusion, in its prior order, that emotional distress damages are not recoverable on a breach of contract claim.  (Dkt. No. 90 at 25.)

"Under California law, a breach of contract claim requires a showing of appreciable and actual damage." *Aguilera v. Pirelli Armstrong Tire Corp*., 223 F.3d 1010, 1015 (9th Cir. 2000) (citing *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable.")).  A claim for nominal damages, speculative harm, or fear of future harm, without a showing of actual damages, does not suffice.  *Id.*; *Ruiz v. Gap*, *Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).  It is also the rule that an insured is entitled to only a single full defense, *Safeco Ins. Co. of America v. Parks,* 170 Cal. App. 4th 992, 1004 (2009), and an insurer that has borne the responsibility and cost of that defense is itself entitled to a sharing or contribution by the other responsible insurers, *see Continental Cas. Co. v. Zurich Ins. Co*., 57 Cal. 2d 27, 37 (1961); *Fireman's Fund Ins Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1289, 1295 (1998).  The measure of damages for any breach of the duty to defend are the "costs and attorneys fees expended by the insured in defending the underlying action." *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp*., 130 Cal. App. 4th 1078, 1088-89 (2005).

Here, the Newlins seek damages for the additional and reasonable defense costs incurred in retaining Quade, the Newlins' independent defense counsel; emotional distress; attorneys' fees and courts costs to obtain policy benefits or *Brandt* fees; and other consequential damages.  (Dkt. No. 81, Newlins' Am. Counterclaim/TPC ¶ 86.)  On the defense costs incurred in retaining Quade, the Court noted in its prior order that on June 10, 2020, the Newlins assigned to Quade all their rights under the legal services

agreement between Newlins and Quade to recover unpaid excess fees from CCL and/or Travelers, (Dkt. No. 82, Quade's Am. Counterclaim/TPC ¶ 17).  Therefore, the Court held that the Newlins cannot seek as damages the difference in the amount of attorney's fees to be paid to Quade.  (Dkt. No. 73 at 18.)

As to emotional distress damages, in the prior order, the Court granted dismissal of the breach of contract claim because the Newlins did not provide any legal support for their claim of emotional distress damages on a breach of contract claim.  (*See id.*)  In opposition, Newlins now argue that that emotional distress damages are recoverable as a form of consequential contract damages resulting from an insurer's breach of its defense obligations citing, *inter alia*, *State Farm Mut. Auto Ins. Co. v. Allstate Inc. Co*., 9 Cal. App. 3d 508, 527-28 (1970), *Chelini v. Nieri,* 32 Cal. 2d 480 (1948), and *Crisci v. Sec. Ins. Co. of New Haven, Conn*., 66 Cal. 2d 425, 434 (1967).  (Dkt. No. 90 at 26.)  Travelers merely respond that the Court got it right the first time.

The traditional rule is that emotional distress damages are not recoverable on a breach of contract claim.  *See Wynn v. Monterey Club*, 111 Cal. App. 3d 789, 799 (1980).  However, in line with the cases cited by the Newlins, emotional distress damages may be recoverable but only when "the express object of the contract is the mental and emotional well-being of one of the contracting parties."  *Erlich v. Menezes*, 21 Cal. 4th 543, 559 (1999) ("Cases permitting recovery for emotional distress typically involve mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable.") (citing *Burgess v. Superior Ct.*, 2 Cal. 4th 1064 (1992) (infant injured during childbirth); *Molien v. Kaiser Fdn. Hosps.,* 27 Cal. 3d 916 (1980) (misdiagnosed venereal disease and subsequent failure of marriage); *Kately v. Wilkinson*, 148 Cal. App. 3d 576 (1983) (fatal waterskiing accident); *Chelini v. Nieri,* 32 Cal. 2d 480 (1948) (failure to adequately preserve a corpse)).  As the California Supreme Court explained in justifying emotional distress damages for a breach of contract claim, "[w]henever the terms of a contract relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties, or the subject-matter of which is such as directly to

affect or move the affection, self-esteem, or tender feelings of that party, he may recover damages for physical suffering or illness proximately caused by its breach." *Chelini v. Nieri*, 32 Cal. 2d 480, 482 (1948).  In *Chelini,* the court found that emotional distress damages were warranted for breach of a contract with a mortician to preserve the body of plaintiff's mother which caused the body to become a "rotted, decomposed and insect and worm infested mass." *Id.* at 481.

In this case, the Newlins have not alleged that the object of CCL's insurance contract is the well-being of themselves.  In fact, the California Supreme Court reversed an award of damages for emotional distress for negligent construction of the plaintiffs' house.  *Erlich*, 21 Cal. 4th at 559.  Therefore, the Newlins' argument concerning emotional distress damages is without merit.

Further, *Crisci v. Sec. Ins. Co. of New Haven, Conn.*, 66 Cal. 2d 425, 434 (1967), is not persuasive as the California Supreme Court recognized emotional distress damages for breach of contract because the breach also constituted a tort stating, "[r]ecovery of damages for mental suffering in the instant case does not mean that in every case of breach of contract the injured party may recover such damages.  Here the breach also constitutes a tort." *Id.*

Finally, in *State Farm Mut. Auto Ins. Co. v. Allstate Inc. Co.*, 9 Cal. App. 3d 508, 527-28 (1970), while the court of appeal upheld an award of emotional distress on a breach of contract claim, subsequent courts have questioned or limited its application to breaches of the implied covenant allowing for tort damages.  *See Everett Assocs., Inc. v. Transcontinental Ins. Co.*, 159 F. Supp. 2d 1196, 1206 (N.D. Cal. 2001) (citing cases) ("Although no court has explicitly criticized *State Farm*, subsequent decisions construe *State Farm* as allowing tort damages when an insurer breaches the implied covenant, rather than the duty to defend alone.").

Therefore, on the allegations in the Newlins' amended counterclaim, the Court concludes that emotional distress damages for a breach of contract claim has not been sufficiently alleged.

20cv765-GPC(DEB)

The Newlins also seek *Brandt* fees as damages to support a breach of contract claim. However, *Brandt* fees are allowable under a breach of implied duty of good faith and fair dealing and not a breach of contract claim. *See Brandt v. Superior Ct.*, 37 Cal. 3d 813, 817 (1985) (attorney's fees incurred to obtain benefits under a policy that were wrongfully withheld by the insurer in bad are recoverable as damages on a tortious claim of bad faith or breach of the implied covenant of good faith and fair dealing). The Newlins have failed to alleged damages to support a breach of contract claim.

In conclusion, the Court DENIES Travelers' motion to dismiss the Quade's breach of contract claim and GRANTS Travelers' motion to dismiss the Newlins' breach of contract claim for their failure to allege damages.

### 3. Newlins' Claim for Breach of the Covenant of Good Faith and Fair Dealing

Travelers also moves to dismiss the amended counterclaim for breach of the covenant of good faith and fair dealing filed by the Newlins. (Dkt. No. 85-1 at 25-26.) The Newlins summarily oppose. (Dkt. No. 90 at 22.)

"California law implies a covenant of good faith and fair dealing in every insurance contract." *Anguiano v. Allstate Ins. Co.*, 209 F.3d 1167, 1169 (9th Cir. 2000) (per curiam) (citing *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 312 (1999)). "This duty extends to an insurance company's insureds," *Anguiano*, 209 F.3d at 1169, and "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement," *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 818 (1979). A breach of covenant of good faith and fair dealing cannot survive absent any coverage under an insurance policy. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995); *Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest,* 168 F3d. App'x 850, 853 (9th Cir. 2006) (quoting *Brizuela v. Calfarm Ins. Co.,* 116 Cal. App. 4th 578, 594 (2004) ("A claim for breach of the covenant of good faith and fair dealing cannot be maintained where a party is barred from bringing a claim for breach of contract.")).

20cv765-GPC(DEB)

1    Here, the breach of the covenant of good faith and fair dealing arises from

2  Travelers' refusal to provide independent counsel due to an alleged conflict of interest.

3  Because the Court dismisses the breach of contract claim based on the Newlins' failure to

4  allege damages on the breach of the contract claim, the breach of the covenant of good

5  faith and fair dealing claim must also fail.  *See Park Townsend LLC v. Clarendon*

6  *America Ins. Co.*, 916 F. Supp. 2d 1045, 1057 (N.D. Cal. 2013) (dismissing breach of the

7  implied covenant of good faith and fair dealing because breach of contract claims failed).

8  Accordingly, the Court GRANTS Travelers' motion to dismiss the Newlins' amended

9  counterclaim for breach of the implied covenant of good faith and fair dealing.

10      **4.      Quade's Claim for Indemnity-Equitable Subrogation-Waiver-Estoppel**

11    Travelers moves to dismiss the second cause of action in Quade's amended

12  counterclaim arguing that the allegations remain unchanged from the original

13  counterclaim which the Court dismissed for failure to state a claim.  (Dkt. No. 86-1 at 22-

14  23.)  Quade does not address Travelers' argument.  Because the allegations remain

15  unchanged from the prior counterclaim and Quade has not opposed the arguments raised

16  by Travelers, the Court GRANTS Travelers' motion to dismiss the second claim for

17  indemnity, equitable subrogation, waiver and estoppel as unopposed.

18  **C.    Leave to Amend**

19    In opposition, the Newlins and Quade ask that in the event the Court concludes the

20  amended counterclaims are not sufficiently detailed on how Travelers' reservation of

21  rights created an actual conflict of interest with respect to the coverage issues, they seek

22  leave to amend to file second amended counterclaims.  (Dkt. No. 90 at 9 n. 1; *id.* at 18

23  n.2; *id.* at 24 n.4.)  Here, the Court concluded that the amended counterclaims allege an

24  actual conflict of interest sufficient to survive a motion to dismiss.  However, the Court

25  grants dismissal of the Newlins' breach of contract claim due to their failure to allege

26  damages.  In their opposition, they do not seek leave to amend in the event the Court

27  dismisses the breach of contract claim based on damages.  However, even if they did seek

28  leave to amend, the Court concludes it would be futile as the Newlins were already given

an opportunity to amend the damages allegation in the SAC.  Accordingly, the Court DENIES the Newlins' request for leave to amend.  *See DeSoto,* 957 F.2d 655 at 658.

**Conclusion**

Based on the above the Court GRANTS Travelers' motions to dismiss the amended counterclaim filed by the Newlins without leave to amend.  The Court DENIES Quade's motion to dismiss the first cause of action for breach of contract and GRANTS Quade's motion to dismiss claim the second cause of action for indemnity-equitable subrogation-waiver and estoppel.

IT IS SO ORDERED.

Dated:  April 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge